830 P.2d 823

**The STATE of Arizona, Appellee,**

v.

**Joseph BARTLETT, Jr., Appellant.**

**No. CR–88–0411–PR.**

Supreme Court of Arizona.

May 8, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie and Diane M. Ramsey, Phoenix, for appellee.

David P. Flannigan and Hicks & Conlogue, P.C. by James L. Conlogue, Bisbee, for appellant.

## OPINION

Memorandum Decision of the Court of Appeals, Division Two, filed November 10, 1988, vacated

FELDMAN, Chief Justice.

In *State v. Bartlett*, 164 Ariz. 229, 240, 792 P.2d 692, 703 (1990) (hereinafter *Bartlett I*), we held that Joseph Bartlett, Jr.'s forty-year sentence constituted cruel and unusual punishment under the eighth amendment to the United States Constitution. The case is back before this court because the United States Supreme Court vacated our opinion and remanded for further consideration in light of its decision in *Harmelin v. Michigan,* — U.S. —, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). *See Arizona v. Bartlett,* — U.S. —, 111 S.Ct. 2880, 115 L.Ed.2d 1046 (1991).

## FACTS AND PROCEDURAL HISTORY

Joseph Bartlett, Jr. (Defendant) was convicted in 1987 of two counts of sexual conduct with a minor, under A.R.S. § 13–1405. The facts established that the two girls involved were just under fifteen years old and that the sexual acts were entirely consensual. Nevertheless, the state invoked the provisions of A.R.S. §§ 13–604(H) and 13–604.01, requiring the trial court to impose mandatory consecutive sentences on the two counts. As a result, even though he imposed the mitigated minimum terms of fifteen and twenty-five years, the trial judge was required to sentence Defendant to consecutive terms totaling forty years in prison, the sentence to be served as "hard time," with no possibility of early release or parole.

Acknowledging that A.R.S. § 13–604.01 was constitutional on its face, Defendant challenged the constitutionality of his sentence and claimed that, with regard to his crime, the sentence constituted cruel and unusual punishment. The court of appeals rejected this argument and affirmed Defendant's sentence in a memorandum decision. *State v. Bartlett,* No. 2 CA–CR 88–0024 (Ct.App. Nov. 10, 1988). On review, we concluded that Defendant's sentence constituted cruel and unusual punishment under the eighth amendment to the United States Constitution. *Bartlett I,* 164 Ariz. at 240, 792 P.2d at 703. Noting that Defendant could not be given a more lenient sentence under the provisions of A.R.S. § 13–604.01, we remanded the case for resentencing, classifying Defendant as a class 2 felon but holding that "the statutory range of sentencing under A.R.S. § 13–604.01 [could not] constitutionally be applied" on resentencing. *Id.* at 241–42, 792 P.2d at 704–05.

The United States Supreme Court granted the state's petition for a writ of certiorari, vacated our opinion, and remanded for reconsideration in light of its decision in *Harmelin*. While *Arizona v. Bartlett* was pending before the United States Supreme Court, Defendant appeared before the trial judge for resentencing pursuant to our order of remand. No longer constrained by A.R.S. §§ 13–604(H) and 13–604.01, the trial judge was vested with considerably more discretion in sentencing Defendant on his two-count conviction. After hearing evidence regarding the offenses, and in the exercise of his discretion, the judge imposed the minimum terms for a class 2 felony, sentencing Defendant to five and one-quarter years on one count and seven years on the other, the sentences to run concurrently. The trial judge could have, but did not, sentence Defendant to aggravated terms that, if imposed consecutively, would have totalled thirty-five years. Under the sentence imposed, Defendant would have become parole-eligible in approximately four years and eight months and could have served no more than seven years. Thus Defendant, who has been incarcerated in the state prison system since his sentencing in 1988, would soon be eligible for parole if not for the United States Supreme Court's remand for reconsideration.

**304**

On remand from the United States Supreme Court, we requested additional briefing from counsel and heard additional oral argument on the question of whether our holding in *Bartlett I* could stand in light of the Supreme Court's decision in *Harmelin*. Accordingly, we begin with a summary of our previous opinion and an analysis of the Supreme Court Justices' opinions in *Harmelin*.

## DISCUSSION

### A. *Bartlett I*

We granted review in *Bartlett I* to determine whether Defendant's sentence constituted cruel and unusual punishment under the federal or state constitution. 164 Ariz. at 230, 792 P.2d at 693. Applying the three-prong test of *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), we held:

1. The forty-year sentence with no possibility of early release was grossly out of proportion to the severity of the crimes as shown by the facts of the case. *Bartlett I*, 164 Ariz. at 234–36, 792 P.2d at 697–99.

2. The sentence was disproportionate to others imposed in Arizona for more serious crimes. *Id.* at 236–37, 792 P.2d at 699–700.

3. The sentence was disproportionate to those imposed on similarly situated defendants in other jurisdictions. *Id.* at 237–40, 792 P.2d at 700–03.

We therefore concluded that Defendant's sentence constituted cruel and unusual punishment under the eighth amendment to the United States Constitution, and consequently did not address the validity of the sentence under the analogous provision in the Arizona Constitution. *Id.* at 240–41, 792 P.2d at 703–04.

### B. *Harmelin v. Michigan*

Ronald Harmelin was sentenced in state court to a mandatory term of life imprisonment without possibility of parole after being convicted of possessing 672 grams of cocaine. On appeal to the United States Supreme Court, Harmelin claimed his sentence was unconstitutionally cruel and unusual because it was "significantly dispro-

portionate" to his crime, and because the judge was required by statute to impose a fixed sentence without considering the "particularized circumstances of the crime and of the criminal." *Harmelin*, —— U.S. at ——, 111 S.Ct. at 2684.

Justice Scalia announced the Court's judgment that Harmelin's sentence did not constitute cruel and unusual punishment. Justice Scalia delivered the Court's opinion, however, only in rejecting Harmelin's contention—which Bartlett does not raise in the present case—that "a sentence which is not otherwise cruel and unusual becomes so simply because it is 'mandatory'" and that individualized sentencing is required in noncapital cases. *Id.* at ——, 111 S.Ct. at 2701–02. In contrast, only Chief Justice Rehnquist concurred with Justice Scalia's conclusion that "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee," *id.* at ——, 111 S.Ct. at 2686, which was *not* the holding of the Court.

Justice Kennedy, joined by Justices O'Connor and Souter, delivered a concurring opinion on the question of proportionality, the issue now before us. Justice Kennedy stated that the eighth amendment "encompasses a narrow proportionality principle." *Id.* at ——, 111 S.Ct. at 2702. He interpreted *Solem* as "best understood as holding that comparative analysis within and between jurisdictions is *not always* relevant to proportionality review." *Id.* at ——, 111 S.Ct. at 2707 (emphasis added). "[I]ntra- and inter-jurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* The important test, therefore, is whether the sentence is grossly disproportionate to the gravity of the offense. The purpose of comparative analysis is to validate an initial inference of gross disproportionality. *Id.*

Finally, four members of the Court (Justices White, Blackmun, Stevens, and Marshall) would not restrict *Solem* at all. *Id.* at ——, 111 S.Ct. at 2709–19 (White, J., dissenting); *id.* at ——, 111 S.Ct. at 2719

(Marshall, J., dissenting); *id.* at ——, 111 S.Ct. at 2719–20 (Stevens, J., dissenting).

Applying the view of the Court is difficult when the Justices' opinions are so diverse and expressed in five separate opinions. We believe, however, that *Solem* survives *Harmelin.* While two Justices conclude that it was wrong, neither a majority nor a plurality was willing to over-rule *Solem.*[1] On the other hand, it seems reasonable to conclude that if *Solem*'s proportionality analysis is to be applied at all, Justices Scalia and Rehnquist would probably prefer Justice Kennedy's approach over the dissenters' strict adherence to *Solem*'s three-prong analysis.[2] We therefore reexamine our opinion in *Bartlett I* under the standard articulated by Justice Kennedy.[3]

1. While Justice Scalia stated that *Solem* was wrong, —— U.S. at ——, 111 S.Ct. at 2686, he did not say—and could not, given only Chief Justice Rehnquist's concurrence—that it was overruled.

2. The vast majority of federal and state courts that have assessed the validity of the *Solem* proportionality analysis in the wake of *Harmelin* have applied or assumed the validity of at least the gross disproportionality standard advocated by Justice Kennedy. *See United States v. 38 Whalers Cove Drive,* 954 F.2d 29 (2nd Cir. 1992) (applying *Solem* analysis); *United States v. Gordon,* 953 F.2d 1106 (8th Cir.1992) (conducting review based on Justice Kennedy's opinion in *Harmelin* ); *Tart v. Massachusetts,* 949 F.2d 490, 503–04 & n. 16 (1st Cir.1991); *United States v. Salmon,* 944 F.2d 1106, 1130–31 (3rd Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992); *United States v. Hopper,* 941 F.2d 419, 422 (6th Cir.1991); *United States v. Jones,* 950 F.2d 1309, 1317 (7th Cir. 1991); *United States v. Contreras,* 937 F.2d 1191, 1195–96 & n. 3 (7th Cir.1991); *United States v. Manuel,* 944 F.2d 414, 417 (8th Cir.1991); *United States v. Johnson,* 944 F.2d 396, 408–09 (8th Cir.) (no further analysis undertaken unless sentence grossly disproportionate to crime), *cert. denied,* —— U.S. ——, 112 S.Ct. 646, 116 L.Ed.2d 663 (1991); *United States v. McLean,* 951 F.2d 1300, 1303 (D.C.Cir.1991) ("Eighth Amendment's proportionality principle applies to noncapital sentences"); *United States v. Curtis,* 33 M.J. 101, 108 n. 9 (C.M.A.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1177, 117 L.Ed.2d 421 (1992); *People v. Weddle,* 1 Cal.App.4th 1190, 2 Cal.Rptr.2d 714, 715–17 & n. 1 (1991) (discussing difficulty in interpreting multiple opinions in *Harmelin* ); *People v. Gaskins,* 825 P.2d 30, 34 n. 10 (Colo. 1992); *Isom v. State,* 261 Ga. 596, 408 S.E.2d 701, 702–03 (1991); *State v. Brown,* 825 P.2d 482, 491 (Idaho 1992). *See also United States v. Thompson,* 944 F.2d 1331 (7th Cir.1991) (would not address whether standard is disproportionality or gross disproportionality since under the circumstances sentence was neither), *cert. denied,* —— U.S. ——, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992); *United States v. California Publishers Liquidating Corp.,* 778 F.Supp. 1377, 1387 (N.D.Texas 1991); *State v. Cavanaugh,* 1991 WL 170184, at *2 (Conn.Super.) (sentence not inappropriate or disproportionate given nature of offense, character of offender, public interest protected, and deterrent purpose of sentence), *cert. denied,* 220 Conn. 930, 598 A.2d 1100 (1991).

Indeed, only a handful of courts and judges have expressed the view that *Harmelin* overruled *Solem. See United States v. LaFleur,* 952 F.2d 1537, 1547 (9th Cir.1991) (citing *Harmelin* for proposition that eighth amendment does not require assessment of appropriateness of sentence in noncapital cases); *People v. Knott,* 224 Ill.App.3d 236, 166 Ill.Dec. 521, 539, 586 N.E.2d 479, 497 (1991) ("*Solem v. Helm* was expressly overruled in *Harmelin*"). *See also State v. Ortega,* 112 N.M. 554, 558, 817 P.2d 1196, 1220 (1991) (Baca, J., concurring in part and dissenting in part) (*Harmelin* "has cast doubt on the vitality of *Solem*"). We believe these courts misinterpret *Harmelin.*

Finally, several cases have either applied *Harmelin*'s holding that mandatory sentencing is not unconstitutional merely because it is mandatory, or affirmed sentences under *Harmelin*'s *result* by comparing sentences to the sentence approved in *Harmelin,* most commonly in drug cases. *See United States v. Lowden,* 955 F.2d 128 (1st Cir.1992); *United States v. Kramer,* 955 F.2d 479, 488 (7th Cir.1992); *United States v. Knapp,* 955 F.2d 566, 570 (8th Cir.1992) (defendant's claim that sentence for participation in drug conspiracy was cruel and unusual punishment "simply lacks merit"); *United States v. Campusano,* 947 F.2d 1, 4 (1st Cir.1991) (mandatory sentencing not cruel and unusual punishment); *United States v. Torres,* 941 F.2d 124 (2nd Cir.1991); *United States v. Pickett,* 941 F.2d 411 (6th Cir.1991); *United States v. Dunson,* 940 F.2d 989 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992); *United States v. Harvey,* 946 F.2d 1375 (8th Cir. 1991); *United States v. Van Winrow,* 951 F.2d 1069, 1071 (9th Cir.1991); *State v. Smith,* 1991 WL 215646, at *3 (Del.Super.) (severe mandatory sentences not cruel and unusual under *Harmelin*), *appeal dismissed,* 604 A.2d 419 (Del. 1991); *Leftwich v. State,* 589 So.2d 385 (Fla.App. 1991) (prisoner smuggling marijuana into prison). *See also State v. Hermann,* 164 Wis.2d 269, 474 N.W.2d 906, 911 (App.) (citing *Harmelin* and concluding that sentence for drug conviction was not "shocking to the public sentiment"), *review denied,* 477 N.W.2d 286 (Wis. 1991).

3. At the same time, we believe that under the views of four members of the Court (Justices

## C. Application of the *Harmelin* Standard

### 1. *Gross Disproportion of Defendant's Sentence to His Crimes*

■ We begin our inquiry under *Harmelin* by following Justice Kennedy's direction to determine whether Defendant's forty-year total sentence with no possibility of parole is grossly disproportionate to his crimes. In *Bartlett I*, we held that the "broad application of the statute to encompass [Defendant's] situation results in a penalty *grossly out of proportion* to the severity of the crime." 164 Ariz. at 236, 792 P.2d at 699 (emphasis added). We reached this conclusion after thorough analysis of the facts, which may be summarized as follows: In September 1986, Defendant, age twenty-three, was introduced to Mary,[4] age fourteen and one-half. A few months later, Mary introduced Defendant to her friend Susan, of approximately the same age. Mary had voluntary sexual intercourse with Defendant in December 1986, when she was fourteen years and ten months of age. Susan also had voluntary sexual intercourse with Defendant in December 1986, when she was fourteen years and six months of age.

In January 1987, Susan's mother filed a complaint with the police, alleging that Defendant had forcibly sexually assaulted Susan. When Defendant learned from neighbors that the police were inquiring about him, he voluntarily went to the police station. Defendant admitted to the police that he had had consensual sexual intercourse with both Susan and Mary knowing that they were under fifteen years old at the time. Both girls testified at trial that the intercourse with Defendant had been voluntary. Defendant was found guilty of two counts of sexual conduct with a minor under fifteen years old. *See* A.R.S. § 13-1405.[5]

There are no new facts to be considered in our current analysis. In general, then, this is a case of consensual sexual relations. On the other hand, we bear in mind that the two victims were below the age determined by the legislature to be the age at which consent to sexual relations could validly be given. This means, of course, that Defendant's conduct was criminal, but does not foreclose the constitutional issue: whether a forty-year sentence without possibility of parole is cruel and unusual when applied to the facts set forth above.

In *Solem*, the Supreme Court set forth several factors relevant in weighing the gravity of an offense against the severity of a penalty in order to determine gross disproportion. These include "the harm caused or threatened to the victim or society, and the culpability of the offender. . . . For example, as the criminal laws make clear, nonviolent crimes are less serious than crimes marked by violence or the threat of violence." 463 U.S. at 292-93, 103 S.Ct. at 3011. The Court explained that

> [t]his list is by no means exhaustive. It simply illustrates that there are generally accepted criteria for comparing the severity of different crimes on a broad scale, despite the difficulties courts face

White, Blackmun, Stevens, and Marshall), the *Solem* analysis we employed in *Bartlett I* would stand, and that the result we reached would presumably be valid.

It is also worth noting that we expressly considered in *Bartlett I* many of the principles identified by Justice Kennedy, including the properly legislative function of fixing sentences for specific crimes, *Harmelin*, — U.S. at —, 111 S.Ct. at 2703, and the rarity of finding disproportion because "we lack clear objective standards to distinguish between sentences for different terms of years." *Id.* at —, 111 S.Ct. at 2705. *Accord Bartlett I*, 164 Ariz. at 233, 792 P.2d at 696 (legislature has "broad authority . . . in determining the types and limits of punishments for crimes") (quoting *Solem*, 463 U.S. at 290, 103 S.Ct. at 3009); *id.* at 240, 792 P.2d at

703 ("The Supreme Court has said that successful challenges to the proportionality of particular sentences are 'exceedingly rare.' *Solem*, 463 U.S. at 289-90, 103 S.Ct. at 3009. This is such a rare case."). We adhere to those principles in this opinion.

**4.** We use fictitious names for the teenage girls. *See Bartlett I*, 164 Ariz. at 230 n. 1, 792 P.2d at 693 n. 1.

**5.** The current text of § 13-1405(B) makes sexual conduct with a minor under *fourteen* a class 2 felony punishable pursuant to § 13-604.01. The statute was amended in 1990; at the time Defendant committed his crime, the relevant age was fifteen. *See* 1990 Ariz.Sess.Laws, ch. 384, § 2.

in attempting to draw distinctions between similar crimes.

*Id.* at 294, 103 S.Ct. at 3011. Although *Harmelin* narrowed *Solem*'s proportionality review, it did not criticize the factors utilized in *Solem* to determine whether the sentence is grossly disproportionate to the crime.

Having again reviewed the case, we find now, as we found before, that the original sentence imposed on Defendant is "a penalty grossly out of proportion to the severity of the crime." *Bartlett I*, 164 Ariz. at 236, 792 P.2d at 699. We base that conclusion on several factors.

First, the circumstances of this crime, particularly the absence of violence or any threat of violence, minimize its severity. *See Harmelin,* —— U.S. at ——, 111 S.Ct. at 2705–06 (comparing nonviolent crime in *Solem* to violence often accompanying or resulting from drug crimes). As we wrote in *Bartlett I:*

> Although the minor's consent will not decriminalize the sexual conduct, that consent is relevant to our inquiry into the gravity of the offense. In this case, both minors were close to the maturity line that the legislature has drawn for less serious offenses. According to their testimonies, both were willing participants in defendant's conduct. Defendant used no violent force or threats against them. Neither girl was physically injured or testified to any emotional trauma. Under these circumstances, we must certainly consider these offenses less grave than the others punishable under the

same statutory scheme: second degree murder, sexual assault, taking a child for the purposes of prostitution, child prostitution, involving or using a minor in drug offenses, aggravated assault, molestation of a child, sexual exploitation of a minor, child abuse, or kidnapping. *See generally* A.R.S. § 13–604.01.

164 Ariz. at 234–35, 792 P.2d at 697–98.

Second, Defendant's lack of a prior record of any crime, let alone a crime involving children, further reduces the gravity of his offenses, particularly with respect to the increased sentence for his "recidivist" second offense. *See Harmelin,* —— U.S. at ——, 111 S.Ct. at 2705 (discussing felonies underlying defendant's recidivism in *Solem*). As we stated in our original opinion:

> · As to defendant's personal culpability, the record indicates that he was an "immature" young man who associated with a younger peer group because of his emotional insecurities, which included a pending divorce after marriage at a young age. He had no prior felony record and no history of assaulting young children. No evidence was presented that he intended to harm these girls, either physically or emotionally.

*Bartlett I,* 164 Ariz. at 235, 792 P.2d at 698. These circumstances are relevant here, not because they excuse the conduct but because the question of "gross disproportion" cannot be resolved without considering all of the factors that aggravate or mitigate the crime.[6] To ignore the facts in

---

**6.** In examining the facts of the crime and the criminal, we do not, as argued by the dissent, apply *Solem* instead of *Harmelin*. Dissent at 311, 830 P.2d at 832 (Corcoran, J.). We do not allude to *Bartlett I* because it is a "comprehensive and lucid application of *Solem*," dissent at 311, 830 P.2d at 832 (Corcoran, J.), but, rather, because it contains a "comprehensive" analysis of Defendant's offenses. That analysis was repeated *ante* because we read Justice Kennedy's opinion in *Harmelin* to mean that it is the circumstances of the crime and the criminal that must be considered in determining gross disproportion. As the dissent concedes, this approach is consistent with the analysis *articulated* by Justice Kennedy. Dissent at 312, 830 P.2d at 833 (Corcoran, J.).

Nor is that dissent correct in arguing that five justices rejected consideration of the particular-

ized circumstances of the crime and the criminal in determining the question of disproportionality. *See* dissent at 312, 830 P.2d at 833 (Corcoran, J.) (quoting *Harmelin,* —— U.S. at ——, 111 S.Ct. at 2705). The quoted and cited portions of *Harmelin* are from Justice Scalia's opinion and relate to the alleged facial invalidity of mandatory sentencing schemes; the Court held that a statute was not unconstitutional on its face merely because the sentencing judge could not consider the facts of the crime. This defendant does not raise that issue. The question here is whether the severity of the punishment, as compared to the facts of the crime, is grossly disproportionate. *See Harmelin,* —— U.S. at ——, 111 S.Ct. at 2702.

determining whether a sentence is cruel and unusual would make the title of the statute—"Dangerous Crimes Against Children"—determine the constitutionality of the sentence imposed. Surely, if this court has a responsibility to review the constitutionality of sentences under the eighth amendment, that duty requires us to apply the standards of the federal constitution to the facts of what occurred, no matter what label the legislature has attached to the criminalizing statute. Legislatures must of necessity paint with a broad brush, leaving it to the courts to measure constitutionality by applying law to facts—the true judicial function.

Third, we cannot in good faith ignore the realities of adolescent life described in *Bartlett I:* "We must ... recognize that sexual conduct among post-pubescent teenagers is not uncommon." 164 Ariz. at 235, 792 P.2d at 698.[7] Indeed, "[a]ccording to their testimonies, both [girls] were willing participants in defendant's conduct." *Id.* at 234, 792 P.2d at 697. While this does not make Defendant's conduct any less "criminal," it illustrates the relative severity of its harm to society. *Cf. Harmelin,* —— U.S. at ——, 111 S.Ct. at 2705–06 (drug crime in a different category than "relatively minor, nonviolent crime at issue in *Solem,*" given grave threat of violence and harm to society resulting from drug trafficking and use).

We acknowledge the legislature's prerogative to criminalize behavior and to choose the appropriate punishment. *See Harmelin,* —— U.S. at ——, 111 S.Ct. at 2703. Hence, we do not view this crime as minor—witness the seven-year sentence imposed on resentencing. But so long as the eighth amendment contains even a narrow proportionality principle—and *Harmelin* says that it does, —— U.S. at ——, 111 S.Ct. at 2702—it is difficult to believe that it permits the state to imprison for forty years' hard time everyone eighteen years of age or older who twice has had inter-

course with a consenting, willing, post-pubescent teenager. While the dissent views this as a "rational" method of controlling the societal threats posed by teenage sexual activity, dissent at 313, 830 P.2d at 834 (Corcoran, J.), we believe it so drastic an approach to an age-old problem as to indicate that the threshold of constitutional limitations has been reached.

Finally, the evolution of the law and present sentencing standards tell us much about the disproportionality of the sentence. While statutory rape, along with many other felonies, may once have been a capital crime, *see Harmelin,* —— U.S. at ——, 111 S.Ct. at 2691, societal standards have changed. Indeed, the modern trend in the law has been to separate the crime of statutory rape from other violent forms of rape, and concomitantly to reduce the severity of the sentence. *See generally* American Law Institute, *Model Penal Code and Commentaries* §§ 213.1 comment 6, 213.3 comment 2 (Official Draft and Revised Comments 1980). The "minimum" sentence imposed in this case, however, for consensual sexual intercourse with two willing post-pubescent girls is comparable to the minimum sentence imposable had Defendant been provoked, become violent, killed the girls, and been convicted of second degree murder. *See* A.R.S. § 13–604.01(1)(a).

■ As we said before:

Measuring the gravity of the offenses in this context, we must compare the harshness of the penalty. The legislature has imposed mandatory minimum consecutive sentences of 15 and 25 years for the first and second acts of consensual sexual conduct with a minor, with no possibility of early release. The trial court thus had no discretion to reduce the penalty according to the individual circumstances that indicated a less serious offense or a

---

7. The dissent misinterprets our use of the word "uncommon." We do not use the word because "we believe" the crime "should not be considered severe." Dissent at 312, 830 P.2d at 833 (Corcoran, J.). We use it, quoting Justice Cor-

coran from *Bartlett I,* because it accurately characterizes the type of behavior under examination and helps to distinguish it from more serious crimes.

less culpable defendant.[8] Defendant, with no prior felony history, has received a 40–year penalty for sexual conduct with two consenting post-pubescent teenagers. *The broad application of the statute to encompass this situation results in a penalty grossly out of proportion to the severity of the crime.* Although such a harsh penalty may be justified in the context of other, more heinous crimes included within the sentencing scheme, it is not justified under the specific circumstances of this case.

*Bartlett I,* 164 Ariz. at 236, 792 P.2d at 699 (emphasis added; footnote added).

Cases such as *State v. Atwood,* 171 Ariz. 576, 832 P.2d 593 (1992), *State v. Beaty,* 158 Ariz. 232, 762 P.2d 519 (1988), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3200, 105 L.Ed.2d 708 (1989), and *State v. Roscoe,* 145 Ariz. 212, 700 P.2d 1312, *cert. denied,* 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 525 (1985), *see* dissent at 315, 830 P.2d at 836 (Corcoran, J.), illustrate the very point we make. These cases involve violent sexual crimes against young children who were incapable of giving actual, let alone legal, consent and who were later murdered by the perpetrators in question. In our view, the eighth amendment requires that a clear distinction be made between such crimes, the facts of which demand and receive the most severe penalties, and the crime that we consider today. The proportionality principle contained in the eighth amendment requires that this defendant, whose crime involved no violence and whose victims willingly consented, be treated much less severely than those who commit violent sexual crimes against young children.

Nor is this a case in which, as the dissent suggests, our personal views "conclude our judgment." Dissent at 314, 830 P.2d at 835 (Corcoran, J.). In measuring what is cruel and unusual, the eighth amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion). At one time, the stocks or punishment by flogging might not have been cruel and unusual. One supposes that castration would be an effective and prompt punishment for this crime, and surely a more certain, less expensive and perhaps more "rational" method of controlling sexual promiscuity, *see* dissent at 313, 830 P.2d at 834 (Corcoran, J.), than forty years' imprisonment without possibility of parole. Informed by our reading of the standards of present-day civilization, we nevertheless venture that today such punishments are cruel and unusual, even were the legislature to authorize them by statute. The eighth amendment, after all, is either a barrier to legislative action or nothing but empty words. The point we make, which the dissent avoids, is that—as a matter of proportionality standards, not of either intrajurisdictional comparison or comparison between modes of punishment—a sentence of forty years without possibility of parole for consensual sex with post-pubescent teenagers reaches the threshold of gross disproportion, given the fact that the people, through their legislature, have adopted statutes under which the courts impose comparable punishment by imprisonment for crimes such as violent rape, second degree murder, and brutal assault of children. *See* cases cited, *post,* note 9.

Here, unlike in *Harmelin,* which dealt with a defendant convicted of an offense involving drug dealing, it can be fairly said that the regime applied to the offense committed by Defendant is an "ancient one revived in a sudden or surprising way[, not one] calibrated with care, clarity and much

---

**8.** We refer again to the trial judge's lack of discretion, not to suggest that the resulting sentence was cruel and unusual because mandatory, but to explain why the trial court did not take the circumstances we have identified as diminishing the gravity of Defendant's crimes into account in sentencing. Indeed, a defendant is not constitutionally entitled to individualized sentencing in noncapital cases. *Harmelin,* —— U.S. at ——, 111 S.Ct. at 2701–02. This, however, does not alter the requirement that the sentence actually imposed not be cruel and unusual, and the relevant circumstances must obviously be taken into account in making that determination.

deliberation." *Harmelin,* —— U.S. at ——, 111 S.Ct. at 2708 (opinion of Kennedy, J.). We therefore conclude, as we did before, that Defendant's sentence was grossly disproportionate to his crimes.

### 2. *Intra– and Inter–Jurisdictional Comparative Analysis*

■ We have drawn the threshold inference required by *Harmelin* that Defendant's sentence was grossly disproportionate to his crimes. We must next conduct an intra- and inter-jurisdictional comparison to validate that inference. *See Harmelin,* —— U.S. at ——, 111 S.Ct. at 2707. First, we compare Defendant's sentence to the sentences imposed in Arizona for more serious crimes. Because *Harmelin* did not alter the analysis under the second and third prongs of the *Solem* test, *see id.,* we will not rehash the comparison we conducted in *Bartlett I;* however, we set forth the original analysis supporting our conclusion in Part I of the Appendix. We quote from our original conclusion:

> We conclude that a comparison of the punishments imposed for other crimes in Arizona reveals the disproportion with

which defendant was sentenced under these factual circumstances.

164 Ariz. at 237, 792 P.2d at 700.[9]

Next, we compare Defendant's sentence to sentences for the same crime in other jurisdictions. In *Bartlett I,* we concluded that "the mandatory minimum sentence imposed on defendant for his *first* offense was disproportionate to sentences received by similarly situated defendants in other jurisdictions," and that "the 25–year mandatory minimum imposed for defendant's second offense [was] also disproportionate to the sentences imposed on similarly situated defendants in other jurisdictions." *Id.* at 239–40, 792 P.2d at 702–03.[10] Again, we see no point in prolonging this opinion by restating that which was thoroughly discussed in *Bartlett I.* We include the supporting analysis from *Bartlett I* as Part II of the Appendix.

We have determined that Defendant's sentence is grossly disproportionate to his crime. Our intra- and inter-jurisdictional comparison confirms our initial inference. We therefore hold that Defendant's forty-year sentence without possibility of early release violates the eighth amendment prohibition of cruel and unusual punishment.

**9.** For more recent cases—cited here as examples and not as precedent, *see* Rule 28(c), Ariz.R.Civ. App.P., 17B A.R.S.—see *State v. DeCrow,* No. 1 CA–CR 90–1231 (Ct.App. Nov. 5, 1991) (twenty-year sentence imposed where defendant "brutally raped his minor stepdaughter, he engaged in sexual conduct with the victim for two years and the victim not only suffered physically but will continue to suffer emotionally as a result of his conduct"); *State v. Lyon,* Nos. 2 CA–CR 90–0556 and –0557 (consolidated) (Ct.App. Aug. 22, 1991) (twenty-year sentence for sexual conduct with defendant's twelve year-old stepdaughter, sexual indecency with stepson, and child abuse of second stepdaughter); *State v. Flores,* 2 CA–CR 90–0035 and 91–0245–PR (consolidated) (Ct. App. Aug. 27, 1991) (twenty-year sentence, to be served "day-for-day," for violent rape of a fourteen year-old victim and then assisting an accomplice's rape of the victim). ·

These cases also illustrate that, contrary to the dissent's claim, *see* dissent at 314, 830 P.2d at 835 (Corcoran, J.), our courts have imposed lesser or comparable sentences for more serious crimes.

**10.** The state argued in *Bartlett I,* and argues again now, that Defendant's sentence is similar to that which he could have received in many

jurisdictions, and refers this court to a chart summarizing the sentencing provisions in other jurisdictions. We appreciate the difficulty inherent in comparing sentences when the definition of crimes varies so widely among jurisdictions, and recognize the challenge in summarizing this information succinctly yet accurately; nevertheless, we must be able to rely with confidence on a party's assessment of the crimes and the accompanying sentencing schemes relevant to our comparison. The state's chart is of limited utility in this regard. For example, the state's chart includes Utah as a state in which Defendant could have received a similar sentence under the relevant recidivist statutes. Our research, however, suggests that in Utah under the circumstances of this case Defendant could have been sentenced to *at most* five years in prison and a $5,000 fine on each of two counts of unlawful sexual intercourse, a third degree felony, and that the habitual sex offender statutes apply only to offenses committed after a defendant has been convicted of a prior sex offense. *See* Utah Code Ann. §§ 76–3–203(3) (felony sentencing), 76–3–301 (fines), 76–3–407 and 76–3–408 (habitual sex offenders), 76–5–401 (unlawful sexual intercourse not amounting to rape), 76–5–406 (circumstances rendering consent ineffective for purposes of rape) (1990).

## D. Cruel and Unusual Punishment Under the Arizona Constitution

In *Bartlett I,* we explained that "[h]aving concluded that the sentences imposed in this case violate the eighth amendment prohibition against cruel and unusual punishment, we do not address whether they violate art. 2, § 15 of the Arizona Constitution." 164 Ariz. at 241, 792 P.2d at 704. For the same reason, we do not address at this time the issue of whether our precedent applying a proportionality analysis—predating *Solem* [11]—would require a broader proportionality analysis under the Arizona Constitution than is appropriate under the federal constitution as interpreted in *Harmelin.* Nor do we consider whether other factors suggest a different standard for assessing cruel and unusual punishment under our state constitution.

## DISPOSITION

Defendant's original sentence constituted cruel and unusual punishment under the limited proportionality analysis and principle articulated in Justice Kennedy's concurring opinion in *Harmelin.* That sentence is vacated. We need not, therefore, reach the issues pertaining to the Arizona Constitution.

In *Bartlett I,* after concluding that Defendant could not constitutionally be sentenced under A.R.S. § 13–604.01, we remanded to the trial court for resentencing with instructions that Defendant be sentenced as a class 2 felon under A.R.S. §§ 13–701 and 13–702. 164 Ariz. at 241, 792 P.2d at 704. Pursuant to our instructions, the trial court has resentenced Defendant to five and one-quarter years on one count and seven years on the other, the sentences to run concurrently. That sentence stands and has not been challenged by Defendant. Because Defendant has already been resentenced, there is no need for another remand. The court of appeals' memorandum decision is vacated. The sentence presently in effect is affirmed.

JAMES DUKE CAMERON, J. (retired), FRANK X. GORDON, Jr., J. (retired), concur.

CORCORAN, Justice, dissenting:

### I. *Harmelin versus Solem*

I respectfully dissent. I believe that the majority properly interprets *Harmelin v. Michigan,* —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), as requiring a somewhat narrower proportionality analysis than that previously required by *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). I dissent, however, because instead of applying such an analysis, the majority merely re-applies *Solem.*

As the author of *Bartlett I,* I am pleased that the majority recognizes it as a comprehensive and lucid application of *Solem.* However, in *Arizona v. Bartlett,* —— U.S. ——, 111 S.Ct. 2880, 115 L.Ed.2d 1046 (1991), the United States Supreme Court vacated *Bartlett I* and remanded the case to this court for further consideration in light of *Harmelin*—not for some minor editing and rearrangement.

Just what light *Harmelin* casts—with its 5 separate opinions—is concededly not easy to see. I agree with the majority that Justice Kennedy's opinion, although joined only by Justices O'Connor and Souter, articulates the proportionality analysis now required by the eighth amendment.[12] I disagree, however, with the majority's application of that analysis.

Under Justice Kennedy's analysis, a court must first determine whether it is reviewing "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin,* —— U.S. at ——, 111 S.Ct. at 2707. If the threshold comparison does not lead to an inference of gross disproportionality, the analysis is complete; the sentence does not offend the eighth amendment. If, on the other hand, the threshold comparison does

---

11. *See, e.g., State v. Mulalley,* 127 Ariz. 92, 96, 618 P.2d 586, 590 (1980).

12. Like the majority, I believe that Justice Scalia and Chief Justice Rehnquist would prefer Justice Kennedy's approach to the dissenters' adherence to *Solem.*

lead to an inference of gross disproportionality, the court may find it useful to conduct intra- and inter-jurisdictional proportionality reviews. *Harmelin,* —— U.S. at ——, 111 S.Ct. at 2707.

The majority begins its analysis by stating, "In *Bartlett I,* we held that the 'broad application of the statute to encompass [Defendant's] situation results in a penalty *grossly out of proportion* to the severity of the crime.' We reached this conclusion after thorough analysis of the facts...." (emphasis in original) (citation omitted). Then, after re-analyzing the exact same facts that we analyzed in *Bartlett I,* the majority concludes that "the original sentence imposed on Defendant is 'a penalty grossly out of proportion to the severity of the crime.'" (Citation omitted.)

While I would have to agree that this analysis is consistent with the gross disproportionality analysis *articulated* by Justice Kennedy, it is wholly inconsistent with the gross disproportionality analysis *conducted* by Justice Kennedy. Justice Kennedy's analysis measured the severity of Harmelin's crime *not* by analyzing the *particular facts and circumstances* of the crime, but rather by analyzing the *threat posed to the individual and to society* by the commission of that crime. *See Harmelin,* —— U.S. at ——, 111 S.Ct. at 2705–07 (In determining whether Harmelin's crime was momentous enough to warrant a life sentence without parole, Justice Kennedy did not discuss the fact that during the commission of his crime Harmelin was neither violent nor did he injure anyone. Rather, Justice Kennedy discussed numerous ways in which illegal drugs threaten the individual and society.). Moreover, 5 Justices expressly *rejected* Harmelin's argument that his sentence was unconstitutional because "the sentencing judge was statutorily required to impose it, without taking into account the particularized circumstances of the crime and of the criminal," and held that the eighth amendment allows a judge to impose a sentence *without* taking into account the particulars of the crime or of the criminal. *See Harmelin,* —— U.S. at ——, ——–——, ——–——, 111 S.Ct. at 2684, 2701–02, 2707–09. In sum, *Harmelin*

provides no support for the majority's discussion of the indispensability of considering the facts of defendant's crimes or for its consideration of those facts in determining whether defendant's sentences are grossly disproportionate to the severity of his crimes.

In addition to re-analyzing the facts of defendant's crimes, the majority bases its conclusion that his sentences are grossly disproportionate to the severity of his crimes by considering 4 additional factors. The first is "the circumstances of [the] crime." As just noted, however, a fair reading of *Harmelin* compels the conclusion that in conducting our gross disproportionality analysis, we should not take into account the circumstances of the crime.

The second factor is defendant's "lack of a prior record." In *Harmelin,* however, Justice Kennedy did not mention the fact that Harmelin had no prior felony convictions. Similarly, 5 Justices expressly rejected Harmelin's argument that "it is 'cruel and unusual' to impose a mandatory sentence of such severity, without any consideration of so-called mitigating factors such as, *in his case, the fact that he had no prior felony convictions." Harmelin,* —— U.S. at ——, 111 S.Ct. at 2701 (emphasis added). Under *Harmelin's* gross disproportionality analysis, this court should not take into account defendant's lack of a prior record.

The third factor the majority considers is "the realities of adolescent life." The majority appears to believe that the crimes committed in this case should not be considered severe because they are "not uncommon." By affirming Harmelin's sentence, however, the United States Supreme Court appears to believe that even crimes which are "not uncommon," such as possessing illegal drugs, may be considered severe enough to impose the harshest punishment available, save death. *See Harmelin,* —— U.S. at ——, 111 S.Ct. at 2705. Indeed, it is precisely *because* the crimes committed by defendant and Harmelin are "not uncommon" that they pose such a threat to the individual and to society.

Further, *Harmelin* makes clear that it is not for this court to weigh the realities of adolescent life in determining the propriety of a particular sentence. As Justice Kennedy pronounced in *Harmelin,*

> [T]he fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is "properly within the province of legislatures, not courts." Determinations about the nature and purposes of punishment for criminal acts implicate difficult and enduring questions respecting the sanctity of the individual, the nature of law, and the relation between law and the social order. "As a moral or political issue [the punishment of offenders] provokes intemperate emotions, deeply conflicting interests, and intractable disagreements." The efficacy of any sentencing system cannot be assessed absent agreement on the purposes and objectives of the penal system. *And the responsibility for making these fundamental choices and implementing them lies with the legislature.*

*Harmelin,* —— U.S. at ——, 111 S.Ct. at 2703 (emphasis added) (citations omitted). Under *Harmelin's* gross disproportionality analysis, the legislature, not this court, must determine what role, if any, the realities of adolescent life play in fixing prison terms for defendants convicted of sexual misconduct with children.

This is certainly not to say that this court may uphold as constitutional a sentence that has no rational basis. It may not. Conversely, however, I believe that *Harmelin* requires this court to uphold as constitutional a sentence that does have a rational basis. *See Harmelin,* —— U.S. at ——, 111 S.Ct. at 2706 ("[T]he Michigan Legislature could with reason conclude that the threat posed to the individual and society by possession of [more than 650 grams] of cocaine ... is momentous enough to warrant the deterrence and retribution of a life sentence without parole.... [A] rational basis exists for Michigan to conclude that [Harmelin's] crime is as serious and violent as the crime of felony murder without specific intent to kill, a crime for which

'no sentence of imprisonment would be disproportionate....' ") (citations omitted).

The fourth and final factor the majority considers is the "evolution of the law and present sentencing standards." The majority states that "societal standards have changed," and "the modern trend in the law has been to separate the crime of statutory rape from other violent forms of rape, and concomitantly to reduce the severity of the sentence." What this statement ignores, however, is that *Harmelin* allows societal standards to *change back.* And, by enacting the statutes at issue in this case, the Arizona Legislature has undoubtedly chosen to adopt a more severe punishment than that espoused by the "modern trend." Further, modern trends are, at best, an elastic and subjective standard by which to measure the constitutionality of a sentence of imprisonment under the eighth amendment. Because our inquiry is not whether defendant's sentences comport with the modern trend, but rather whether a reasonable person might think them proper, this court should, as *Harmelin* instructs, leave the consideration of modern trends to the legislature. *Harmelin,* —— U.S. at ——, ——, 111 S.Ct. at 2703, 2706; *see also Lochner v. New York,* 198 U.S. 45, 75–76, 25 S.Ct. 539, 546–47, 49 L.Ed. 937 (1905) (Holmes, J., dissenting) ("Some ... laws embody convictions or prejudices which judges are likely to share. Some may not. But a Constitution is not intended to embody a particular [theory]. It is made for people of fundamentally differing views, and the accident of our finding certain opinions natural and familiar, or novel, and even shocking, ought not to conclude our judgment upon the question whether statutes embodying them conflict with the Constitution of the United States.").

Likewise, the majority's comparison of defendant's sentences to being sent to the stocks, being flogged, or being castrated—which all deal with severe *modes* of punishment—is not helpful in determining whether a severe *term* of punishment is constitutional after giving meaning to the eighth amendment by reference to "the evolving standards of decency that mark the

progress of a maturing society." What is helpful, however, is to recognize that our society, via the Arizona Legislature, has determined that sexual intercourse between a person who is at least 18 years of age and a child is *not* in conformity with our "standards of decency." While it might be decent to some people or even in some societies, ours has "progressed and matured" to the point of condemning such conduct.

The majority makes two other comparisons which, although technically correct, tell only half of the story. First, the majority states that "[t]he 'minimum' sentence[s] imposed in this case ... [are] comparable to the minimum sentence[s] imposable had Defendant been provoked, become violent, killed the girls, and been convicted of [two counts of] second degree murder." The rest of the story is that *if* this hypothetical had played itself out, it is more likely that the sentencing judge would have imposed the *maximum* sentences of 60 years (25 years for the first count and 35 years for the second count), rather than the *minimum* sentences of 40 years (15 years for the first count and 25 years for the second count) as he did in this case.[13]

Second, the majority's statement that "the people, through their legislature, have adopted statutes under which the courts impose comparable punishment[s] by imprisonment for crimes such as violent rape, second degree murder, and brutal assault of children," is simply inaccurate. Although it is true that the *range* of punishment for the crimes committed by defendant and the crimes of violent rape, second degree murder, and the brutal assault of children are the same, there is no evidence that "courts impose comparable punishment" for these offenses. Indeed, it is not only counterintuitive to believe that courts do so, it is inconsistent with the record in this case, which suggests that the reason the court imposed upon defendant the minimum sentences imposable was because of the relatively non-violent nature of his crimes. By comparing defendant's sentences to a parade of horribles and unsound "what ifs," it is the majority, not I, who fails to give meaning to the eighth amendment by reference to "the evolving standards of decency that mark the progress of a maturing society."

After revealing what I consider to be fatal flaws in the majority's analysis under *Harmelin,* I now advance what I consider to be the appropriate proportionality analysis as articulated *and conducted* by Justice Kennedy. First, we must conduct an inquiry to determine whether "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin,* ——— U.S. at ———, 111 S.Ct. at 2707. In conducting this inquiry, I believe that we must look not at the facts or particular circumstances of the crime, but we must decide whether the legislature could, with reason, conclude that the *threat posed to the individual and to society* by defendant's offenses is momentous enough to warrant the deterrence and retribution of the sentences imposed. *See Harmelin,* ——— U.S. at ———, 111 S.Ct. at 2706. If such a rational basis exists, then the sentences imposed are not grossly disproportionate to the severity of defendant's crimes. *Id.*

While I do not know exactly what factors the legislature considered in enacting the Sexual Conduct with a Minor statute, A.R.S. § 13–1405, or adopting the sentencing guidelines of the Dangerous Crimes Against Children statute, A.R.S. § 13–604.-01, I believe that the sentences imposed in this case are not grossly disproportionate to the offenses committed in light of the threat posed to the individual and to society by engaging in sexual misconduct with children.

## II. *The Threat Posed to the Individual*

The threat of harm posed to children who become the victims of sexual misconduct is

---

**13.** Moreover, if defendant had been "provoked, become violent, [and] killed the girls," *after* having sexual intercourse with them, he would have been subject to *minimum* sentences totalling *90* years' imprisonment without possibility of parole. *See* A.R.S. § 13–604.01(A), (G) (15 years for first count of sexual misconduct with a minor, 25 years for second count, and 25 years for each count of second degree murder).

significant. In considering the statutes at issue in this case, the legislature was presented with and considered no less than 3 types of individual harm: emotional, social, and physical. *Sexual Offenses; Child Victims: Hearings on S.B. 1021 Before the Comm. on Judiciary*, 37th Leg., 1st Sess. 1–15 (Feb. 18, 1985) (hereinafter *Child Victims*).

Children who become the victims of sexual misconduct often develop emotional problems. One mother testified that as a victim of sexual misconduct, her daughter "has behavioral problems and worse of all, she has stated, '. . . I never want to grow up because adults don't do fun things.'" *Child Victims, supra*, at 9. In addition, children who are the victims of sexual misconduct often engage in misconduct as adults. *See, e.g., State v. Atwood*, 171 Ariz. 576, ——, 832 P.2d 593 (1992) (defendant molested as child engaged in sexual misconduct as adult). Concomitantly, children who suffer from emotional problems often suffer in their social relationships.

History has taught us that children who become the victims of sexual misconduct are many times physically harmed and even murdered by their attackers to eliminate the children as witnesses. *See, e.g., Child Victims, supra*, at 9 (mother testified that daughter had been victimized by man who told her that if she told anyone he would kill her and her mother); *Atwood*, 171 Ariz. at 576, 832 P.2d 593 (defendant convicted of murdering 8–year–old girl had told friend he "had considered 'picking up' another child and that 'this time he would make sure the child wouldn't talk'"); *State v. Beaty*, 158 Ariz. 232, 762 P.2d 519 (1988) (defendant sexually molested and murdered 13–year–old child); *State v. Castaneda*, 150 Ariz. 382, 724 P.2d 1 (1986) (defendant sexually molested and murdered 12–year–old child); *State v. Roscoe*, 145 Ariz. 212, 700 P.2d 1312 (1984) (defendant sexually molested and murdered 7–year–old child).[14] Not quite so traumatic, but physical harm nonetheless, is the pain suffered by the children during and after the sexual misconduct. Finally, sexual misconduct subjects children to diseases such as AIDS, and unwanted pregnancy.

### III. *The Threat Posed to Society*

During the hearings on the statutes at issue in this case, Jim Skelly, the Chairman of the House Judiciary Committee, made the following statement:

> Crimes against children have increased by epidemic proportions not only in the State of Arizona but throughout our Nation. According to an article in the *Arizona Republic*, February 17, 1985, child abuse has increased 35 percent nationally in the last year. Current figures for the City of Phoenix show that in 1984 as compared to 1983, assaults and aggravated assaults against minors increased by 36 percent, and although rape against minors decreased by four percent, other sex [offenses] against minors increased by 18 percent. It is not necessary to reiterate to you the tragic happenings in Tucson and Tempe. It is important to note that Frank Jarvis Atwood has a long history of child molestation and had been released on parole after only serving a short sentence. In addition, Mr. Castaneda was also released on parole and we all know what happened to the little Perry boy.
>
> I think it is timely that this month's *Reader's Digest* printed an article entitled, "Why Do We Tolerate These Crimes Against Children?"

*Child Victims, supra*, at 2. Chief Assistant Attorney General Steven J. Twist also recognized that "crimes against children have made many of our urban centers uninhabitable and cause many of us to have fear and frustration over the criminal justice system." *Child Victims, supra*, at 3.

In addition, the mother of an 8–year–old girl who had been abducted and murdered by a convicted child molester emphasized

---

**14.** I am not saying that defendant's crimes were as severe as the crimes committed in these cases. They were not. Nor am I saying that defendant should be sentenced to death, as was each defendant in these cases. He should not. I list these cases only to illustrate the *threat posed* to children who become the victims of sexual misconduct.

the anguish and grief suffered not only by the victim's family, but also by the victim's friends and classmates. *Child Victims, supra,* at 14. That same mother stressed, "It is time we realize we need to protect our children because they are our future. If we do not protect our children, what will it be like fifteen years from now?" *Id.*

In concluding that Harmelin's sentence was not grossly disproportionate to the severity of his crime, Justice Kennedy recognized that the "[p]ossession, use and distribution of illegal drugs represents 'one of the greatest problems affecting the health and welfare of our population.'" *Harmelin,* —— U.S. at ——, 111 S.Ct. at 2705 (citation omitted). In concluding that defendant's sentences are not grossly disproportionate to the severity of his crimes, I would recognize that sexual offenses against children represent a similar problem. In other words, I believe a rational basis exists for defendant's sentences.

Because I find that defendant's sentences are not grossly disproportionate to the severity of his crimes, no intra- or inter-jurisdictional proportionality review is appropriate. *Harmelin,* —— U.S. at ——, 111 S.Ct. at 2707. Similarly, because this court's analyses of art. 2, § 15 of the Arizona Constitution have consistently been identical to analyses of its federal counterpart, I believe that no independent analysis of the state constitution is appropriate. *See, e.g., State v. Mulalley,* 127 Ariz. 92, 95–97, 618 P.2d 586, 589–91 (1980), *overruled on other grounds, State v. Noble,* 152 Ariz. 284, 731 P.2d 1228 (1987); *State v. Davis,* 108 Ariz. 335, 337–38, 498 P.2d 202, 204–05 (1972).

## IV. *Conclusion*

The result in *Harmelin* is that a defendant in Michigan may constitutionally be sentenced to life imprisonment without possibility of early release for a first felony conviction of possession of more than 650 grams of cocaine. From that result, it seems clear that the Arizona Legislature has the constitutional authority to require a 23–year–old defendant on a first conviction who has had sexual intercourse with two different 14–year–old girls to be imprisoned for a total of 40 years without possibility of early release.

I read *Harmelin* as reinforcing society's declaration of war against drugs. In light of *Harmelin,* I believe that the Arizona Legislature is entitled to declare war against the sexual abuse of children.

MOELLER, Vice Chief Justice, dissenting.

I agree with Justice Corcoran's dissent. The United States Supreme Court remanded this case to us to reconsider in light of *Harmelin.* Putting aside the difficulties of interpreting every nuance of *Harmelin,* one fact is incontrovertible: the United States Supreme Court held that Michigan may constitutionally impose lifetime imprisonment without possibility of parole upon a first-time offender for possession of 650 grams of cocaine. That being the case, I fail to understand why Arizona may not constitutionally impose a "flat" fifteen-year term on an adult convicted of sexual conduct with a minor, to be followed by a "flat" twenty-five-year term for another conviction for a similar offense with a different minor.

Because our review is limited to the *constitutionality* of the sentence, rather than to its *wisdom,* I believe we are compelled to affirm the original sentence. The majority's arguments, including those relative to "the realities of adolescent life" (majority opinion 171 Ariz. at 308, 830 P.2d at 829), are appropriately addressed to the legislature, which is charged with the responsibility of determining the *wisdom* of the punishment. Our role is much more limited— we may only determine whether the punishment is *constitutional.* In my opinion, *Harmelin* teaches that it is.

## APPENDIX

Because our opinion in *Bartlett I* was vacated by the United States Supreme Court, we reproduce here the intra- and inter-jurisdictional comparisons we conducted there.

## Part I

*Sentences Imposed for Other Crimes in Arizona* quoting *Bartlett I,* 164 Ariz. at 236–37, 792 P.2d at 699–700.

We next examine the sentences imposed in Arizona on defendants who commit crimes more serious than this defendant's. *Solem,* 463 U.S. at 292, 103 S.Ct. at 3010; *State v. Jonas,* 164 Ariz. 242, 249, 792 P.2d 705, 712 (1990). We have previously disapproved the practice of comparing only those crimes encompassed within the challenged sentencing statute to conclude that the punishment is proportionate because all crimes within the statutory scheme receive the same penalties. *See Jonas,* 164 Ariz. at 249–250, 792 P.2d at 712–713, disapproving the analysis in *State v. Smith,* 156 Ariz. 518, 526, 753 P.2d 1174, 1182 (1987), and *State v. Crego,* 154 Ariz. 278, 280, 742 P.2d 289, 291 (1987).

However, a comparison of the other crimes punishable under the same mandatory sentencing provisions of A.R.S. § 13–604.01 is helpful in this case to show that more serious offenses do not receive any greater punishment. For example, second degree murder, forcible sexual assault, taking a child for the purposes of prostitution, or involving a child in a drug offense are all considered first degree crimes against children, subject to the same mandatory minimum sentences of 15 and 25 years that defendant received. A.R.S. § 13–604.01(A), (D). More potentially serious crimes than those committed here, such as aggravated assault, child molestation, child abuse, or kidnapping, are subject to a lesser minimum sentence of 12 years for the first offense and 23 years for the second offense. *See* A.R.S. § 13–604.01(B), (D).

Other more serious crimes that do not involve children similarly receive lesser penalties than those mandated in this case. Class 2 felonies not involving a dangerous weapon or threatened physical injury are punishable for a first offense with a minimum term of 5.25 years, a presumptive term of 7 years, and a maximum of 14 years, with early release potentially available after only half the sentence has been served. A.R.S. §§ 13–701, –702. Such first-time offenders are eligible for probation, or, if imprisoned, can earn early release credits of 1 day for each 2 days served. A second offense carries a minimum term of 7 years, a presumptive term of 10.5 years, and a maximum of 21 years, with early release potentially available after two-thirds of the sentence has been served. A.R.S. §§ 13–701, –702, –604(B). The first and second sentences are presumed to run consecutively but the trial court has discretion to make them concurrent by stating its reasons on the record. A.R.S. § 13–708. Included within this scheme of punishment for class 2 felonies are the following crimes, all potentially more serious than the offenses committed by this defendant: kidnapping, A.R.S. § 13–1304; sexual assault of an adult, A.R.S. § 13–1406; first degree burglary of a residential structure, A.R.S. § 13–1508; and arson of an occupied structure, A.R.S. § 13–1704. Additionally, manslaughter, a class 3 felony, A.R.S. § 13–1103, is punishable with a minimum sentence of 3.75 years, a presumptive term of 5 years, and a maximum term of 10 years. A.R.S. § 13–701(C)(2), –702(B).

We also compare the circumstances under which other defendants have been subjected to the same mandatory sentencing scheme. In *State v. Taylor,* we upheld an aggregate prison term of 2,975 years for 85 counts of dangerous crimes against children. 160 Ariz. 415, 773 P.2d 974 (1989). In that case, the defendant performed and photographed various sexual acts with children aged from 18 months to 8 years old, and many other unidentified small children. He also had a prior criminal history of sex crimes with young children in two other states. We recognized the "irreparable harm which he has caused to the normal development of numerous children," and his inability "to control his proclivity for sexual conduct with children" as important factors justifying the harshness of the sentence. *Taylor,* 160 Ariz. at 423, 773 P.2d at 982. In *State v. Crego,* the court of appeals upheld two consecutive 20–year prison terms for a defendant who molested 3 different victims under age 15 a few months after he had been released from prison for a similar

offense, and while he was on parole. 154 Ariz. at 279, 742 P.2d at 290. In *State v. Smith,* the court of appeals also upheld a mandatory prison sentence of 91 years for a defendant who repeatedly molested a 10–year–old boy and photographed the numerous incidents on approximately 60 occasions. 156 Ariz. at 520, 753 P.2d at 1176. Defendant also points out other cases in which harsh sentencing provisions were appropriately applied in situations involving repeated and cruel sexual offenses against small children. *See, e.g., State v. Cummings,* 148 Ariz. 588, 716 P.2d 45 (App. 1985) (defendant, a scoutmaster, performed multiple acts of oral and anal sex on 12– to 13–year–old male victims; was sentenced to 5 concurrent prison terms ranging from 7 to 15.75 years); *State v. O'Neill,* 117 Ariz. 343, 572 P.2d 1181 (1977) (defendant, while babysitting, molested a two-year-old infant, resulting in a tear between her vagina and rectum; was sentenced to 20 years to life). These and other cases stand in stark contrast to the circumstances under which this defendant was sentenced in this case.

We conclude that a comparison of the punishments imposed for other crimes in Arizona reveals the disproportion with which defendant was sentenced under these factual circumstances.

### Part II

*Sentences Imposed for the Same Crime in Other States* quoting *Bartlett I,* 164 Ariz. at 237–40, 792 P.2d at 700–03.

We also examine the punishment imposed for the same crime in other jurisdictions. *Solem,* 463 U.S. at 292, 103 S.Ct. at 3010. This comparison is difficult because the offenses defendant committed are chargeable as a broad variety of crimes with varying punishments. However, we have attempted to compare penalties for the crimes closest to those committed here: consensual, nonincestuous, heterosexual intercourse with a 14–year–old.

Additionally, we compare each of defendant's sentences individually, keeping in mind that the 15–year sentence was imposed for a first offense, and that the 25–year sentence was imposed for a second offense. We also consider only those sentences imposed for a defendant with no prior felony convictions, other than the first offense used as an enhancement factor for the second offense. Our focus is necessarily on the mandatory minimum sentences imposed in other jurisdictions, because that is what defendant received here. We do not consider significant the state's argument that defendant could have received maximum sentences in other jurisdictions greater than the minimums imposed in this case, because the record clearly indicates that the trial court did not find aggravating factors justifying maximum sentences under these circumstances.

### (1) *15–year Sentence for First Offense*

In 10 jurisdictions, defendant's offenses would either not be a crime or would be punishable only as a misdemeanor with a sentence of less than one year and/or a fine.[15] For a *first* felony offense in the remaining jurisdictions, defendant would *have faced a minimum* penalty of one, two, or three years,[16] with probation often

---

**15.** *See* Ark.Stat. § 5–14–106 (third degree carnal abuse, a class A misdemeanor); Cal. Penal Code § 261.5, 264 (unlawful sexual intercourse); Ga. Crim.Code § 26–2010 (fornication); Haw. Rev.Stat. § 707–732 (sexual abuse in the third degree); Ill.Crim.Code § 11–4.1 (contributing to the sexual delinquency of a child); Md.Ann. Code § 27–464C (fourth degree sexual offense); Mo.Rev.Stat. § 566.030 (not a felony; age of consent is 14); Pa.C.S.Ann. § 18–3122 (not a felony; age of consent is 14); S.C.Code Ann. § 16–3–655 (not a crime; age of consent is 14); W.Va.Code Ann. § 61–8B–9(a) (sexual abuse in the third degree).

**16.** Felony penalties for a *first* offense in other jurisdictions include the following sentencing ranges: Ala.Code § 13A–6–62 (2 to 20 years); Alaska Stat. §§ 11.41.434, 12.55.125 (1 to 10 years); Colo.Rev.Stat. §§ 18–3–4–3, 18–1–105 (2 to 8 years); Conn.Gen.Stat. § 53a–71(a)(1), 53a–35a (1 to 10 years); Del.Code Ann. tit. 11 §§ 773, 4205 (3 to 30 years); Fla.Stat.Ann. §§ 800.04, 775.082 (1 to 15 years); Idaho Code §§ 18–6101, 18–6104 (1 year to life); Ind.Code Ann. §§ 35–42–4–3(c), 35–50–2–6 (2 to 8 years); Iowa Code § 709.4 (1 to 10 years); Kan.Crim. Code Ann. §§ 21–3503, 21–4501 (3 to 20 years); Ky.Rev.Stat.Ann. § 510.060 (1 to 5 years); La. Rev.Stat.Ann. § 14:80 (1 to 10 years); Me.Rev.

available. Thus, our statute is unique among all jurisdictions in that it imposes a minimum mandatory term of 15 years, which is 5 times higher than that imposed in any other jurisdiction. In all jurisdictions but Arizona, the sentencing judge has a wide range of discretion in imposing a sentence at the bottom of the statutory range that fits the individual circumstances of the crime. Although the *maximum* allowable sentence in some jurisdictions would have fallen within the range of sentencing provided for a first offender under A.R.S. § 13–604.01(A), in no jurisdiction would the sentencing judge be *required* to impose a sentence of more than 3 years for the identical offense. Thus, our legislature has mandated a penalty potentially disproportionate to an individual criminal act or defendant. See J. Howe, Thoughts on Mandatory Sentencing, Ariz. Bar J. June–July 1985, at 24–25.

Such potential disproportionality is not enough to allow us to find defendant's sentences cruel and unusual. *See State v. Taylor*, 160 Ariz. 415, 773 P.2d 974 (1989) ("Although on the national spectrum Arizona deals with crimes against children more severely than many other states, '[t]he Eighth Amendment is not violated every time a state reaches a conclusion different from a majority of its sisters over how to best administer its criminal laws.' *Spaziano v. Florida*, 468 U.S. 447, 464, 104 S.Ct. 3154, 3164, 82 L.Ed.2d 340, 355 (1984)"). Such potential differences in sentencing are "a mark of federalism, not unconstitutionality." *State v. Bishop*, 717 P.2d 261, 272 (Utah 1986).

In this case, however, the potential disproportion between the sentences defendant received and those sentences actually imposed on other similarly situated defendants in other jurisdictions is actual. Defendant has supplied us with a myriad of examples in the published case law of other jurisdictions. A few representative citations illustrate his point: *Diefenderfer v. State*, 745 P.2d 556 (Wyo.1987) (defendant pleaded guilty to third degree sexual assault of a girl under 14; the execution of his sentence of 3 to 5 years suspended and 4 years probation imposed); *State v. DeJesus*, 10 Conn.App. 591, 524 A.2d 1156 (1987) (defendant pleaded guilty to second degree sexual assault of a 14–year–old; sentence of 5 years upheld); *State v. La Borde*, 234 La. 28, 99 So.2d 11 (1958) (defendant convicted of carnal knowledge of 14–year–old; sentenced to one year, 9 months); *State v. Smart*, 247 La. 174, 170 So.2d 365 (1965) (defendant convicted of carnal knowledge of a 13–year–old; sentenced to 3 years); *State v. Rodriguez*, 179 N.J.Super. 129, 430 A.2d 957 (1981) (defendant convicted of sexual assault of a 13–year–old; sentenced to 4 years); *State v. Newell*, 82 N.C.App. 707, 348 S.E.2d 158 (1986) (defendant convicted of taking indecent liberties with a consenting child between 13 and 16; sentenced to 3 years); *State v. Hartman*, 145 Wis.2d 1, 426 N.W.2d 320 (1988) (defendant convicted of statutory rape of a 14–year–old; sentenced to a term of not more than 3 years, but suspended and defendant placed on probation with 6 months in county jail work release program). Additionally, defendant's appellate counsel has avowed to the court that he "has diligently searched

Stat.Ann. tit. 17–A, §§ 254, 1252(2)(D) (1 year); Mass.Gen.Laws Ann. Ch. 265, § 23 (1 year to life); Mich.Comp.Laws § 750.520(4)(a), M.S.A. § 28.-788(4)(a) (1 to 15 years); Minn.Stat.Ann. § 609.-344(1)(b), (2) (1 to 15 years); Miss.Code Ann. § 97–5–21 (1 to 10 years); Mont.Code Ann. § 45–5–503(3)(a) (2 to 40 years); Nev.Rev.Stat. §§ 200.-364(3), 200.368(1) (1 to 10 years); N.H.Rev.Stat. Ann. §§ 632–A:3, 651:2 (1 to 7 years); N.J.Rev. Stat. §§ 2C:14–2(c)(5), 2C:43–6, a(2) (2 to 10 years); N.M.Stat.Ann. §§ 30–9–13(B), 31–18–15 (1 to 2 years); N.Y.Penal Law §§ 130.25, 70.00, subc. 2(e) (1 to 4 years); N.C.Gen.Stat. §§ 14.202.1, 14–1.1(a)(8) (1 to 10 years); N.D.Cent.Code §§ 12.1-20–03, 12.1–32–01, subd. 3 (1 to 15 years); Ohio

Rev.Code Ann. §§ 2907.04, 2929.11(D)(1) (1 to 2 years); 21 Okla.Stat.Ann. §§ 1114(B), 1116 (1 to 15 years); Or.Rev.Stat. §§ 163.355, 161.605 (1 to 5 years); R.I.Gen.Laws §§ 11–37–6, 11–37–7 (1 to 5 years); S.D. Codified Laws § 22–22–1(5) (1 to 15 years); Tenn.Code Ann. § 39–2–605 (1 to 5 years); Tex.Penal Code Ann. § 22.011 (2 to 20 years); Utah Code Ann. §§ 76–5–401(1), 76–3–203(3) (1 to 5 years); Vt.Stat.Ann. tit. 13 § 3252 (1 to 20 years); Wash.Rev.Code §§ 9A.44.079, 9.94A.310, table 1 (1 to 5 years); Wis.Stat.Ann. § 940.-225(2)(e) (1 to 10 years); Wyo.Stat.Ann. §§ 6–2–304, 6–2–306(A)(iii) (1 to 5 years); D.C.Code Ann. §§ 22–2801, 24–203 (1 year to life).

two centuries of case law of each of our 50 sister states. This required the review of just over 2,600 cases. Not one case was found where a similarly situated defendant received an aggravated sentence remotely comparable to that imposed as a mandatory minimum upon Mr. Bartlett."

Given this authority, we conclude that the mandatory minimum sentence imposed on defendant for his *first* offense was disproportionate to sentences received by similarly situated defendants in other jurisdictions.

#### (2) *25–year sentence for second offense*

A comparison of the 25–year mandatory minimum sentence defendant received for the *second* offense with those imposed in other jurisdictions is complicated by the enhancement of defendant's second sentence because the first count was treated as a prior predicate felony. Most jurisdictions punish repeat offenders more stringently, and enhancement of penalties on the basis of prior offenses has been consistently upheld against eighth amendment attacks. *See, e.g., Rummel v. Estelle*, 445 U.S. 263, 276, 100 S.Ct. 1133, 1140, 63 L.Ed.2d 382 (1980); *Cocio v. Bramlett*, 872 F.2d 889, 893 (9th Cir.1989). However, we are mindful that the legislature, in requiring a 25–year minimum sentence for a second offense, implicitly assumed that it was enhancing a constitutionally proportionate minimum sentence of 15 years for a first offense. We have already found the minimum sentence for the first offense to be disproportionate to the facts of this case. Additionally, the "prior" felony in this case was one for which defendant was simultaneously tried and sentenced with the second offense, a factor not existing in other jurisdictions. *See* A.R.S. § 13–604(H).

Also complicating our analysis is the mandatory consecutive nature of the two sentences, along with the absence of the availability of parole. We have previously refused to find the *consecutive* nature of two sentences for two separate crimes to be a factor that would render the second sentence disproportionate. *Jonas*, 164 Ariz. at 249, 792 P.2d at 712. We thus do not consider that factor here.[17] Nonavailability of parole, however, is a factor in determining proportionality, although the absence of parole, in itself, does not make a sentence disproportionate. *Solem*, 463 U.S. at 297 and n. 24, 103 S.Ct. at 3013 and n. 24; *Jonas*, 164 Ariz. at 249, 792 P.2d at 712. In this case, the absence of parole availability requires us to consider that defendant will serve the entire 25–year sentence for the second offense.

Despite these difficulties, a comparison of what penalties defendant would face for a second offense in other jurisdictions, although not as clear as the comparison for a first offense, compels the conclusion that defendant would be subject to a much lighter minimum mandatory sentence for his second offense in all but one state.

In Nebraska, defendant would be subject to a statutory range of 25 to 50 years for a second conviction of sexual assault involving a consenting child less than 16 years old, and would not be eligible for parole. Neb.Rev.Stat. § 28–319(1)(c), (3). However, as the United States Supreme Court noted in *Solem v. Helm*, a finding that a defendant could have received an identically harsh sentence in one other state is also a clear indication that he "could *not* have received such a severe sentence in 48 of the 50 States." 463 U.S. at 299, 103 S.Ct. at 3014 (emphasis added). Furthermore, we have not been advised by the state of any defendant charged in Nebraska with offenses similar to Bartlett's actually receiving such a harsh sentence. Rather, the published cases that we have found challenging the mandatory Nebraska sentence for a second offense have involved more heinous offenses, including forcible rape

---

17. We do not hold, however, that we would never consider the requirement of consecutive sentences to be a factor in determining proportionality. This is not, for example, a case in which consecutive sentences were imposed on a defendant who engaged in one single course of conduct that resulted in separate repetitive crimes with consecutive sentences. In such a case, the consecutive nature of the sentences would perhaps be a factor in deciding proportionality.

with serious physical injuries to the victim. *See, e.g., State v. Brand,* 219 Neb. 402, 363 N.W.2d 516 (1985) (defendant received 35–year sentence for his second conviction of first-degree sexual assault involving the use of force; sentence found not disproportionate to crime). Under these circumstances, we cannot find the 25–year mandatory minimum sentence for defendant's second offense to be proportionate merely on the basis of the Nebraska statute.

Except for Nebraska, no other jurisdiction imposes a mandatory minimum sentence of more than 10 years for a second offense similar to defendant's. In no jurisdiction did we find the particularly harsh combination of provisions present here, including both mandatory consecutive sentencing and nonavailability of parole. We must conclude, therefore, that the 25–year mandatory minimum imposed for defendant's second offense is also disproportionate to the sentences imposed on similarly situated defendants in other jurisdictions.

Based on the above analysis, we hold that defendant's sentences of 15 years for the first offense and 25 years for the second offense are disproportionate to the crimes he committed under the specific facts of this case, and thus violate the eighth amendment proscription against cruel and unusual punishment. This is a narrow holding limited to the facts and circumstances of this case. The Supreme Court has said that successful challenges to the proportionality of particular sentences are "exceedingly rare." *Solem,* 463 U.S. at 289–90, 103 S.Ct. at 3009. This is such a rare case.