KESSLER, J.,
concurring in part and dissenting in part.
¶ 33 I concur with the majority’s analysis concerning equal protection and A.R.S. § 13-4037(B) (2001). I respectfully dissent from the majority’s conclusions as to cruel and unusual punishment.
¶ 34 This ease is not about whether possession of child pornography is a serious crime deserving of severe punishment. It is beyond peradventure that the legislature has *386 the authority to impose severe penalties for this type of crime.
¶ 35 Rather, the issue is whether parties should be given a fair opportunity to present specific evidence to permit a trial court to apply the correct legal standard under State v. Davis, 206 Ariz. 877, 79 P.3d 64 (2003), and determine whether a mandatory sentence is cruel and unusual punishment. For the reasons stated below, Morton Berger (“Berger”) did not receive that opportunity. I would remand this matter for an evidentiary hearing to allow the trial court to determine whether, on the facts of this case, it is cruel and unusual punishment for a statute to require a court to sentence Berger to at least 200 years in prison without any chance of release or parole for possessing twenty images of child pornography downloaded from the Internet.
¶ 36 In many cases, the facts developed at trial and at an aggravation and mitigation hearing would be sufficient to allow a trial court and an appellate court to determine whether mandatory, minimum consecutive sentences were so extreme based on the individual facts of that ease that, like Davis, such sentencing would constitute cruel and unusual punishment. Berger was not given a fair opportunity to develop that factual record and the trial court could not consider such evidence because of a confluence of two events. First, the trial court determined the constitutionality of the mandatory sentencing scheme under a now-erroneous legal standard before Davis was decided. Accordingly, it held it could not consider individual factors about this case and this defendant to determine whether the mandatory 200-year minimum sentence was cruel and unusual punishment.
¶ 37 Second, as a result of that ruling, it was fruitless for Berger to attempt to develop any factual record at sentencing. This is because such a record, under the now-erroneous standard used by the trial court, could not have been considered to determine the cruel and unusual punishment issue. Regardless of any such evidence, the statutory scheme required the trial court to sentence Berger to minimum, mandatory consecutive sentences totaling 200 years in prison without chance of parole or probation, making any mitigation hearing an exercise in futility.
¶ 38 Berger should at least have the opportunity to present evidence which might show that requiring him to live the rest of his life in prison amounts to cruel and unusual punishment. A remand would give Berger and the State an opportunity to present evidence relevant to the cruel and unusual punishment issue, give the trial court an opportunity to apply Davis and provide a complete factual record on the cruel and unusual punishment issue.
¶ 39 As I wrote in State v. Hazlett when this Court upheld the constitutionality of Arizona’s basic child pornography law (A.R.S. § 13-3553 (Supp.2003)), this Court was not addressing the constitutionality of the severity of the statutory punishments for possession of child pornography. 205 Ariz. 523, 529 n. 11, 73 P.3d 1258, 1265 n. 11 (App.2003). As a matter of judicial restraint, we need not and should not reach that constitutional issue today because of the procedural setting of this case. We should not decide the constitutional issue without first allowing the parties to present sufficient facts and allowing the trial court to make sufficient factual findings. See State v. Buhman, 181 Ariz. 52, 54, 887 P.2d 582, 584 (App.1994) (appellate court will not determine constitutional issue when record lacks necessary fact finding by trial court). Compare State v. Dillon, 34 Cal.3d 441, 194 Cal.Rptr. 390, 668 P.2d 697, 700 (1983) (appellate court can determine whether punishment is grossly disproportionate and modify it on appeal when disproportion-ality is manifest on the record). Appellate courts generally have the trial court conduct adequate fact-finding hearings to determine whether a sentence is excessive. State v. Ramos, 133 Ariz. 4, 7, 648 P.2d 119, 122 (1982). Accordingly, I would not reach out to decide the constitutional issue today, but would remand for further proceedings in the trial court to apply Davis.

I. Proceedings Below

¶ 40 In February 2003, the trial court denied Berger’s contention that the statutory sentencing scheme was cruel and unusual. The trial court properly relied on State v. *387 DePiano, 187 Ariz. 27, 926 P.2d 494 (1996), the law as it then existed, and concluded it could not analyze the constitutional argument based on the particular facts of this crime and this particular offender without violating DePiano:
However, the Supreme Court [in DePi-ano ] clearly stated[:]
“But we disapprove of that part of Bartlett II that concludes that Justice Kennedy’s analysis would require an examination of the facts and circumstances of the particular crime and the particular offender. We agree with the minority in Bartlett II that the initial threshold disproportionality analysis is to be measured by the nature of the offense generally and not specifically.[”] [187 Ariz. at 30, 926 P.2d at 497.] In the instant case, defendant Berger asks this Court to look at the specific facts of his case and to determine that the sentence he would be facing [a minimum of 200 years without chance of parole] is cruel and unusual punishment. Such an analysis would be in direct violation of the Arizona Supreme Court’s decision in DePiano. Based on the above analysis, therefore, this Court will use Justice Kennedy’s method of analysis and look at the nature of the offense generally, not specifically.
¶ 41 In applying the DePiano standard, the trial court held that generally the sentencing range from ten to twenty-four years under A.R.S. § 13-604.01 (Supp.2003) for violation of A.R.S. § 13-3553 was not so grossly disproportionate as to require it to find cruel and unusual punishment. Nor, it held, did consecutive sentencing per se amount to cruel and unusual punishment, citing State v. Jonas, 164 Ariz. 242, 245, 792 P.2d 705, 708 (1990).
II. Effect of State v. Davis
¶ 42 While this case was pending on appeal, the Arizona Supreme Court decided Davis. It overturned a crucial aspect of DePiano by requiring an analysis of gross disproportionality of the sentence based on the specific facts in the case. Importantly, it also explained that mandatory consecutive sentences can amount to cruel and unusual punishment when the length of the sentence is so extreme, given those individual factors, that the sentence shocks society’s conscience. We are bound to follow the law as articulated by our supreme court as it exists now, even though Davis was decided after the trial court’s decision. Arnold v. Knettle, 10 Ariz. App. 509, 511, 460 P.2d 45, 47 (1969). Cf. Bradley v. Sch. Bd. of City of Richmond, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (appellate court must follow law in effect at time it renders its decision unless it would result in manifest injustice or there is a statutory directive otherwise).
¶ 43 As the Davis court explained, a three-part test for cruel and unusual punishment still applies,[17] but the first element-an inference of gross disproportionality-must be based on the specific facts as to the nature of the crimes, the defendant and his conduct. 206 Ariz. at 383-84 ¶¶ 31-34, 79 P.3d at 70-71. Underpinning the Davis approach is the concept that, while a legislature can substantially limit a judge’s sentencing discretion by requiring mandatory consecutive sentences, such a limitation is unconstitutional in those rare cases in which the mandatory minimum sentence is so extreme as to shock society’s conscience. Id. at 387-88 ¶ 47, 79 P.3d at 74-75. As the Davis court explained, it is the combination of mandatory and consecutive sentences which may render the sentence so extreme given the individual facts as to shock society’s conscience. Davis, 206 Ariz. at 387-88 ¶ 47, 79 P.3d at 74-75.

III. The Need for An Evidentiary Hearing to Apply Davis

¶ 44 The question then becomes whether, like Davis, the mandatory minimum consecutive sentence of 200 years without chance of parole “cries out” for departure from the general rule. While the majority concludes that it does not, I conclude that we cannot make that determination without a more complete factual record. As explained below, this insufficient factual development is of no *388 small matter. The trial court should have the opportunity to consider specific facts and decide under Davis whether such a mandatory minimum sentence on the facts of this case constitutes cruel and unusual punishment.

First Davis Factor: Inference of Gross Disproportionality

¶ 45 In Davis, the supreme court stated that the analysis of an inference of gross disproportionality has to be based on the facts of the individual case, the individual offender, and the offender’s risk to society. Davis, 206 Ariz. at 383-84 ¶¶ 31-34, 79 P.3d at 70-71. Accord State v. Bartlett, 171 Ariz. 302, 306-08, 830 P.2d 823, 827-29 (1992) (court should look to harm caused or threatened to the victim or society and the culpability of the offender, including the absence of any violence and lack of criminal record).[18] This view is consistent with courts in other juris-dictions, which also look to these factors as well as a defendant’s potential to contribute to society. Dillon, 194 Cal.Rptr. 390, 668 P.2d at 720 (in determining gross dispropor-tionality, court will look to both nature of offense and/or the offender, with particular regard to the degree of danger present to society); In re Lynch, 8 Cal.3d 410, 105 Cal.Rptr. 217, 503 P.2d 921, 939-40 (1972) (indeterminate life maximum sentence for second offense of indecent exposure cruel and unusual given, in part, defendant’s superior intellect and great potential); Wilson v. State, 830 So.2d 765, 778 (Ala.Crim.App.2001) (first prong of disproportionality test includes factors such as circumstances of the crime, harm caused to victim or society, culpability of offender and offender’s motive in committing the crime).
¶ 46 The need for adequate factual development to apply Davis is highlighted by Justice McGregor’s explanation that determining gross disproportionality necessarily involves fact-finding, a process that is best left to the trial court. Davis, 206 Ariz. at 393 ¶ 79, 79 P.3d at 80 (McGregor, J., dissenting in part). In most cases, as in Davis, the record of the trial and any mitigation/aggravation hearing should suffice to present evidence on these factors. In cases like this one, however, when the now-erroneous DePiano standard made meaningless any presentation and consideration of many of the facts relevant to determining gross disproportionality, further fact-finding is needed.
¶ 47 As the Supreme Court stated in Davis, there are a number of factors which a court can examine to determine if there is an inference of gross disproportionality. 206 Ariz. at 384-85 ¶ 36, 79 P.3d at 71-72. Nothing in Davis implies that list is exclusive. As shown by the following chart, some of the same undisputed factors utilized in Davis support a finding that the 200-year mandatory minimum sentence here is cruel and unusual, while some of those factors do not support such a conclusion.
Davis Berger
Convicted of four charges of sexual conduct with a minor, thirteen years minimum sentence each, no chance of parole, to be served consecutively Convicted of twenty counts of possession of child pornography (sexual exploitation of a minor), ten years minimum sentence each, no chance of parole, to be served consecutively_
1. Defendant did not commit the crimes with any violence._ 1. There is no evidence Berger committed any violent acts._
2, No prior record. 2. No prior record.
3. Post-pubescent conduct of victims common and may have encouraged crime. 3. Victims’ “conduct” in no way makes them culpable.[19]
*389 4. Defendant had below average intelligence 4. Defendant was a high school teacher. or maturity._
5. Caught in broad sweep of statute. 5. Caught in broad sweep of statute — violation of A.R.S. § 13-3553 involves not only the possession of child pornography but also the distribution and making of such material, aggravated assault, molestation, child abuse, and kidnapping. Under A.R.S. § 13-604.01(D), same mandatory minimum and consecutive sentences apply._
6. One juror thought sentence would be excessive. Trial judge ordered minimum mandatory sentence. No clemency order requested or ordered and presentence report did not find sentencing range excessive. 6. Trial judge, jurors, presentence report and prosecutor all favored minimum sentence, the lower court issued special clemency order.
¶ 48 The trial court never had the opportunity to weigh these factors under Davis. More importantly, the need for fact-finding here is underscored by the lack of any evi-dentiary hearing regarding several other factors. First, both in the trial court and on appeal, the State attempted to portray Berger as a constant consumer of child pornography as purportedly reflected by his allegedly having thousands of “hits” on his computer for child pornography or allegedly having thousands of illegal images in his possession. The record does not support that Berger possessed thousands of illegal images or thousands of “hits”. Nor was there evidence of how many times Berger searched the Internet for pornography[20] or how many sites he visited. Other than the twenty images he was convicted of, there is no evidence of how many images of actual child pornography he possessed.[21] This is not to minimize either the repulsive nature of the images he did possess or their numbers. The number and nature of the possessed images are only two factors bearing on whether twenty, ten-year mandatory consecutive sentences without chance for release constitutes cruel and unusual punishment. ■
¶ 49 Second, remanding for an evidentiary hearing relating to gross disproportionality would allow the court for the first time to explore both Berger’s risk and potential of contributing to society. Dillon, 194 Cal.Rptr. 390, 668 P.2d at 720-21; Lynch, 105 Cal.Rptr. 217, 503 P.2d at 939-40. At the time of its ruling on the constitutional issue, the trial court was not even aware of a risk assessment — evidence that is relevant to determine whether a sentence may be grossly disproportionate. Long, 207 Ariz. at 146 ¶ 30, 83 P.3d at 624. The assessment was mentioned only in passing during the sentencing hearing. The specific contents of that assessment were never presented to the trial court.
¶ 50 That assessment, albeit without a chance for the State to rebut it, presents what is purported to be an expert opinion-that Berger was a productive member of society (an award-winning teacher) with no prior criminal record, that he acted out of a collection compulsion and that he posed no risk of repeating his conduct or of acting out toward children.
*390 ¶ 51 The majority correctly points out that the assessment was not part of the record on appeal and was only filed with this Court at the Court’s request. However, I am not relying on the risk assessment itself to conclude the sentence was cruel and unusual punishment. Rather, the point I am making is that if there had been an effective eviden-tiary hearing to apply the Davis factors, the evidence in the assessment could have been introduced and the trial court might have found the mandatory 200-year sentence was cruel and unusual punishment.
¶ 52 An evidentiary hearing would allow the trial court to apply Davis in light of tjj^gge and other factors such as the number of images, the circumstances surrounding the crime including the motive, the absence of any evidence he ever purchased any of the images, the manner in which it was committed and the consequences of the Berger’s conduct as well as his age, prior record, risk to society, potential to contribute to society, and personal characteristics and state of mind. Bartlett, 171 Ariz. at 306-08, 830 P.2d at 827-29 (court should consider circumstances of crime including any nonviolent nature as well as lack of any prior record); Dillon, 194 Cal.Rptr. 390, 668 P.2d at 720-22; Lynch, 105 Cal.Rptr. 217, 503 P.2d at 939-40. In making any such determination, not only should the punishment fit the crime, but it should fit the criminal. Dillon, 194 Cal.Rptr. 390, 668 P.2d at 721 (quoting Lynch, 105 Cal.Rptr. 217, 503 P.2d at 921).
¶ 53 This lack of a complete record is crucial to determining cruel and unusual punishment. One of the purposes of Davis is to isolate those eases in which the sentence would truly shock the conscience of the community. 206 Ariz. at 388 ¶ 39, 79 P.3d at 75. The mandatory nature of the minimum 200-year sentence here contrasts with the fact that our sentencing statutes have authorized much more lenient sentences for direct crimes of violence, including:
Placing a defendant on probation without any imprisonment for killing another after the defendant was found guilty of leaving the scene of a fatal accident;[22]
Imposing 9.5 years’ imprisonment upon a driver who cut a young girl in half with his car while she crossed the street after the defendant was found guilty of negligent homicide and leaving the scene of a fatal accident which he did not cause;[23] and
Imposing concurrent sentences amounting to no more than twenty years for second degree murder, three aggravated assault counts and three endangerment counts after the defendant went on a shooting spree killing one person and injuring several others.[24]
¶ 54 This is not to say that the sentences in those other cases were too lenient because they are based on the facts of each case. Rather, the fact that the statutes give judges discretion in those cases to impose such sentences based on extenuating circumstances despite the nature of such crimes highlights the fact that the statute here prohibits such discretion and requires mandatory, flat consecutive sentences regardless of any extenuating circumstances.
¶ 55 The majority seeks to avoid any such remand and fact-finding in several ways. First, like the trial court, the majority cites to Jonas, 164 Ariz. at 245, 792 P.2d at 708, decided before Davis, for the principle that mandatory consecutive sentences do not constitute per se cruel and unusual punishment. By doing so, the majority implies that even if the mandatory minimum sentences were lower, either those sentences still would have to be served consecutively or we can only look at the separate sentences for each image, not the totality of the required sentence. The majority also cites to Davis for the proposition that consecutive sentencing is normally not considered in determining disproportion-ality.
¶ 56 However, that conclusion takes the language from Davis out of context. The *391 core issue here is that for each image Berger possessed, the trial judge was statutorily required to impose a minimum ten-year sentence to be served consecutively, thus requiring a 200-year minimum sentence. As our Supreme Court explained in Davis, while normally a court will not consider consecutive sentences as part of a proportionality review, it is exactly the combination of minimum mandatory sentences and mandatory consecutive sentencing which can create the inference of gross disproportionality:
Although this court normally will not consider the imposition of consecutive sentences in a proportionality inquiry, this case cries out for departure from that general rule____ It is in part because judges in Arizona have no discretion regarding the minimum sentence and must impose consecutive sentences that this sentence fails the proportionality test____ Therefore, to ignore the requirement that the sentences be served consecutively would be to ignore one of the causes of the disproportionality. We recognize the legislature’s right to impose a thirteen-year minimum sentence ... and to require that the sentences be served completely. We also recognize the legislature’s right to require consecutive sentences for this type of offense. We cannot, however, uphold a sentence that becomes unconstitutionally disproportionate to the crimes committed because the sentences are mandatorily lengthy, flat, and consecutive.
Davis, 206 Ariz. at 387-88 ¶ 47, 79 P.3d at 74-75. (Emphasis added.)
¶ 57 Again, there is no issue that Berger was deserving of punishment for this crime. The issue is whether, before requiring Berger to die in prison, the parties and the trial court should have the opportunity to develop and consider evidence about the nature of the crime and of Berger’s risk to society before determining whether a mandatory 200-year consecutive sentence without chance of parole may be so grossly disproportionate to the specific facts as to render such a requirement unconstitutional. If so, a court may impose a different sentence pursuant to A.R.S. §§ 13-702, -702.01 and -702.02 (2001), which is not necessarily flat or consecutive. Davis, 206 Ariz. at 387 ¶ 48, 79 P.3d at 75.
¶ 58 Second, the majority contends that the record shows that, unlike Davis, there is no overwhelming evidence to show an inference of gross disproportionality or that a mandatory 200-year sentence would shock society’s conscience, characterizing Berger as a prototypical offender. The majority does not cite any authority that only overwhelming evidence can prove an inference of gross disproportionality. Clearly Berger was not an innocent user of the Internet who accidentally downloaded prohibited images. However, the characterization of Berger as a prototypical offender is not based on any standard or definition. As noted above, the record does not show that Berger possessed “thousands” of illegal images or his computer had “thousands” of hits. Even though Berger had numerous images, there is still an insufficient record to help us because there was no evidentiary hearing to determine these and other factors relevant to a finding of cruel and unusual punishment.[25] Moreover, there was an insufficient opportunity for Berger to put on such a record.
¶ 59 Finally, the majority contends that the experienced trial judge held the applicable sentencing range was not such as to suggest that it was cruel and unusual punishment. In fact, the trial court determined that the sentencing range was not cruel and unusual punishment under DePiano, which prohibited it from considering whether the required consecutive terms were unconstitutional under the facts of a particular case. That is exactly why a remand for an evidentiary hearing to apply Davis to the facts of this case and this defendant is needed.
¶ 60 By concluding that no further eviden-tiary hearings are needed, the majority seems to imply that absolutely no set of facts *392 could ever lead to an inference that effectively sentencing Berger to die in prison for possession of twenty images from the Internet is cruel and unusual punishment. Although there may be cases in which the defendant has been given an opportunity to present evidence as to the Davis factors and a remand is not needed, this is not one of those cases. As a matter of judicial restraint, I prefer to allow parties to present facts in light of Davis and to permit the trial court to make a full determination of whether the statutorily-required penalty here shocks the conscience.

Second Davis Factor: Intrar-Jurisdictional Comparison

¶ 61 The majority limits its analysis of cruel and unusual punishment to the first part of the Davis test. Despite its importance, turning to the second and third parts may help us validate any concern we have about gross disproportionality. Davis, 206 Ariz. at 385 ¶ 38 and n. 6, 79 P.3d at 72 and n. 6 (second two parts of intra- and inter-jurisdietional analysis are not required “[b]ut we agree with the Supreme Court’s suggestion that such an inquiry might validate the court’s initial impression of gross dispropor-tionality.”).
¶ 62 An intra-jurisdictional comparison shows that possession of child pornography is punished either more severely or similarly to crimes involving more direct physical injuries to the victims. For example, the Davis court pointed out that second-degree murder, sexual assault, and continuous sexual abuse against a child under fifteen would receive the same presumptive sentence as in that (and this) case. 206 Ariz. at 385-86 ¶ 39, 79 P.3d at 72-73. Additionally, persons accused of kidnapping, child abuse, and aggravated assault would be eligible for a ten-year minimum sentence per count. Id. Therefore, the crimes compared in Davis are “seemingly more dangerous crimes than Davis’ [and certainly more dangerous than Berger’s, yet] carry a lesser presumptive sentence” and can be mitigated to a lesser minimum sentence than the ten-year minimum sentence per count here. Davis, 206 Ariz. at 385-86 ¶ 39, 79 P.3d at 72-73.
¶ 63 The State compares the sentencing here to crimes involving violence directly upon a victim. For example, attempted first-degree murder of a child under twelve results in a life sentence with possible parole after thirty-five years. Yet possession of two forbidden images results in a greater punishment: a mandatory, flat, minimum sentence of forty years without chance of parole.

Third Davis Factor: Inter-Jurisdictional Comparison

¶ 64 Berger has provided us with a survey of all fifty states demonstrating that Arizona has the highest possible sentencing range in the entire United States for possession of child pornography. The fact that other states punish child pornography possession less severely than Arizona does not make Arizona’s sentencing scheme unconstitutional. The separation of powers doctrine ensures that our legislature is free to require severe sentences for this type of crime. However, this type of comparison can validate an inference that the mandatory minimum consecutive sentencing scheme is so grossly disproportionate to the facts in a specific case as to be cruel and unusual punishment.
¶ 65 Our independent review of those statutes shows that: (1) three states do not criminalize possession of child pornography; [26] (2) seven states treat it as a misdemeanor or have a maximum sentence of twelve months;[27] (3) twenty-one states have a maximum sentence of eight years with probation eligibility;[28] (4) eight states have a maximum sentence of ten years with eight of those allowing for probation;[29] (5) two states *393 have a maximum sentence of fifteen years, but allow for probation;[30] (6) three states have a maximum sentence of twenty years but allow for probation;[31] and (7) one state has a maximum sentence of five years with the provision that possession of each image constitutes a separate offense.[32] While we do not know from those statutes whether any of those states require consecutive sentences per image, we do know that at least one state (Connecticut) breaks down the prison sentence by the number of images possessed, making it a class B felony for possession of fifty or more images, a class C felony for twenty-fifty images and a class D felony for less than twenty images.

TV. Conclusion

¶ 66 While Berger was convicted of a crime abhorred by society and deserving of punishment, he still should be given an opportunity to present evidence that sentencing him to spend the rest of his life in prison when he may pose no further risk to society is so cruel and unusual as to shock society’s conscience. We cannot tell from the current record whether effectively sentencing Berger to die in prison for possessing twenty forbidden images, taken from the Internet, amounts to cruel and unusual punishment. Given the penalty in this case, fundamental fairness requires that Berger and the State have an opportunity to present evidence on this issue and the trial court have an opportunity to consider whether the specific facts might render the statutorily mandated sentence cruel and unusual.
¶ 67 It is very possible that at such a hearing, Berger will not develop sufficient facts to show that the sentence in this case is grossly disproportionate to the crimes involved and to the nature of the defendant. However, he should be given one fair opportunity to make his ease before having to spend the rest of his life in prison. I would remand this matter to the trial court for hearings on the underlying facts in light of Dams.[33]

. The three part test is whether there is an inference of gross disproportionality, and, if so, whether intra — and inter — jurisdictional analyses validate that inference. Davis, 206 Ariz. at 385 ¶ 38, 79 P.3d at 72.

. DePiano disapproved Bartlett, deciding that courts could not examine the individual facts of any case to determine gross disproportionality as applied to that case. DePiano, 187 Ariz. at 30, 926 P.2d at 497. However, our supreme court in Davis disapproved of DePiano on that point, resurrecting the principles addressed in Bartlett. State v. Long, 207 Ariz. 140, 145 ¶ 25, 83 P.3d 618, 623 (App.2004).

. Thus, application of Davis here lacks what Justice McGregor characterized as the "most disquieting feature” of Davis — comparing the relative culpability of the victims and the defendant. *389 206 Ariz. at 392-93 ¶¶ 76-78, 79 P.3d at 79-80 (McGregor, J., dissenting).

. This fact is relevant because our Supreme Court has stated that consecutive sentencing might be inappropriate when forbidden images were obtained at one time and were simply copied and not photographed by the defendant. State v. Taylor, 160 Ariz. 415, 420, 773 P.2d 974, 979 (1989).

. The State initially charged Berger with possession of thirty-five forbidden images, but voluntarily agreed to dismiss fifteen of those counts. The State’s evidence about “thousands” of "hits” or "images” referred to a computer-driven process creating “fragments" for each website which had a certain word in its description. Those fragments did not reflect how many times Berger searched the Internet, how many sites he visited or how many images he had. Thus, when the jury asked the trial court how many images were found in Berger’s house, even the prosecutor agreed that question "can’t” be answered.

. State v. O'Brien, CR 2003-016197 (Maricopa County Superior Court, Minute Entry of March 26, 2004).

. State v. Tone, 1 CA-CV 03-0029 (Ariz.App. Dec. 26, 2003) (mem.decision).

. State v. Garnica, 1 CA-CR 02-0832 (Ariz.App., Sept. 28, 2004) (mem.decision).

. The majority asserts that every time Berger visited a website containing prohibited images or downloaded such images, he "demonstrated to the producers and sellers of child pornography that there was a demand for their product.” However, there was no evidence he purchased any of the images or that any websites he visited kept track of how many persons visited the website. These factors could be explored at an evi-dentiary hearing on remand.

. Hawaii, Nebraska and Ohio.

. California, Colorado, Iowa, Kentucky, Maine, Maryland and North Dakota.

. Delaware, Illinois, Indiana, Kansas, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New York, Oklahoma, Oregon, Pennsylvania, Rhode Island, Tennessee, Virginia, Vermont, Washington, West Virginia and Wisconsin.

. Idaho and Utah.

. Connecticut, Georgia and Mississippi.

. Florida.

. Such a factual inquiry could also lead the trial court to consider entering a special order allow-

. Alabama, Alaska, Arkansas, Louisiana, Montana, South Carolina, South Dakota and Texas. *393 ing Berger to petition the Board of Executive Clemency for a commutation of sentence, an order which was not requested before. See A.R.S. § 13-603(L) (Supp.2002) (allowing such an order if the judge believes "that a sentence that the law requires the court to impose is clearly excessive.”).