**UNITED STATES of America, Appellee,**

v.

**George TORRES and Victor Torres, Defendants–Appellants.**

Nos. 1651, 1128, Dockets 90–1644(L), 90–1649(L) and 90–1650(L).

United States Court of Appeals, Second Circuit.

Argued May 24, 1991.

Decided Aug. 5, 1991.

Helen Gredd, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., on the brief), for appellee.

Gerald L. Shargel, New York City, for defendant-appellant Victor Torres.

Michael S. Ross, New York City, on the brief, for defendant-appellant George Torres.

Before KEARSE, MAHONEY, and SNEED,* Circuit Judges.

KEARSE, Circuit Judge:

Defendants George Torres ("George") and his brother Victor Torres ("Victor") appeal from amended judgments entered in the United States District Court for the Southern District of New York, John M. Walker, Jr., *Circuit Judge*, sitting by designation, convicting them of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a) (1988), and sentencing each of them, following this Court's remand for resentencing under that section, *see United States v. Torres*, 901 F.2d 205 (2d Cir.) ("*Torres I*"), cert. denied, — U.S. ——, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990), to, *inter alia*, life imprisonment without parole. On appeal, the Torres brothers contend that their sentences violate the Eighth Amendment to the Constitution. For the reasons below, we affirm.

## I. BACKGROUND

### A. *The Prior Proceedings*

The background of the present prosecution is set forth in *Torres I*, 901 F.2d 205, familiarity with which is assumed. In 1988, Victor and George, with sixteen others, were charged with violations of various federal narcotics, firearms, and tax laws, including acting as principal administrators, organizers, and leaders of a continuing criminal enterprise, in violation of 21 U.S.C. §§ 848(a) and (b) (1988). At trial, the government introduced evidence to show that the Torres brothers had presided over a multimillion dollar street-level heroin operation, begun on the Lower East Side of Manhattan in the early 1980's and later moved to the South Bronx. The proof included ledgers seized from the operation, indicating that in a single four-month period in 1987 more than $4.6 million worth of heroin had been sold. The jury found the Torres brothers guilty of virtually all of the charges against them, including those under §§ 848(a) and (b).

Section 848(b), which became effective on October 27, 1986, requires that a defendant convicted of being a principal administrator, organizer, or leader of a continuing criminal enterprise that has gross annual receipts of at least $10 million be sentenced to, *inter alia*, imprisonment for life. Accordingly, following the jury verdicts, then-District Judge Walker sentenced Victor and George to life imprisonment without parole on the § 848(b) counts. He also

---

* Honorable Joseph T. Sneed, of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

sentenced each to a total of 100 years' imprisonment on the other counts and to fines of $12 million, including $2 million on the § 848(b) counts.

In *Torres I,* we affirmed the Torres brothers' convictions on all counts except those under § 848(b). We vacated the convictions under that section because the jury had not been instructed that it could not return verdicts of guilty under § 848(b) unless it found all of the prerequisites for application of that section satisfied during the period following the effective date of the section. 901 F.2d at 224–29. We remanded for resentencing instead under § 848(a). Section 848(a), which permits a sentence of life imprisonment but does not require it, was in effect during the entire period of conduct charged in the indictment.

### B. *The Proceedings on Remand*

In connection with the resentencing, counsel for the Torres brothers urged now-Circuit Judge Walker, sitting in the district court by designation, not to sentence Victor and George to life imprisonment. Their submissions included (a) a memorandum and a letter describing the Torres brothers' legitimate business interests, their family life, their postincarceration activities, and their religious conversion while in prison, and (b) numerous letters from employees and business associates attesting to the Torres brothers' character. In addition, Victor and George jointly wrote a letter to the court describing their new-found religious faith and expressing regret for their past criminal activity.

At the resentencing hearing, counsel for the Torres brothers argued that the court should impose a sentence based "not only [on] the crime but the criminal," Sentencing Hearing Transcript, October 22, 1990 ("Tr."), at 3, and urged that any sentence allow defendants some hope that, if their behavior warranted, they might eventually be released from prison. Both Victor and George also spoke at the hearing, acknowledging their past mistakes and describing the transformations in their personalities and values as a result of their religious conversions.

After hearing all of the arguments, the district court decided to impose sentences that included life imprisonment, stating as follows:

The court has carefully considered the statements of all the parties, particularly the very moving appeals of both Victor and Jorge Torres. And there is much to be said for the positions that have been advocated by both counsel for the defendants and the defendants themselves.

I am quite confident in my own mind that both Jorge and Victor Torres have a different mind set today than they did when the sentence was originally imposed.

The sentence that was originally imposed was one which was severe. It was one that was, in effect, mandated by Section 848(b) of Title 21, and it could only be imposed upon the finding of certain facts by the jury that existed in this case.

Congress had in mind a life sentence when the jury concluded that not only was there a continuing criminal enterprise involving large numbers of people, but also when the profits of that enterprise were so great that more than $10 million would be earned in a given year, and then that sentence would be imposed only upon principal leaders of the organization.

Congress, as is the case with any court which has to impose sentence, must take into account certainly the characteristics of the individual defendant, but also the enormity of the crime and the deterrent effect of the punishment for that crime on the community.

Thus, the equation is not entirely in the defendant's favor at the time of sentence, because while the court must be mindful of the individual characteristics of each defendant, take those into account, as I do, the court must also be aware of the deterrent effect of any sentence.

I sat through the trial in this case, and I am aware of the gravity—the enormity of the crimes that were committed here.

Yes, one could say that Victor and Jorge Torres made a mistake. But the mistake was not just one mistake. This was a mistake that was made day after day, year after year. The defendants have quite candidly admitted that they accumulated vast wealth as a result of what occurred here, and the many millions of dollars that they accumulated, at the expense of the addicts of the South Bronx, exists as a testament to the enormity of this crime.

At the time of the original sentence, I pointed out that these defendants were preying on those individuals whose lives were indeed already desperate. I think the defendants now realize that that's what they were doing. That they were capitalizing, as I said at that time, on the despair and lack of hope that lead an individual to a life of dependency on drugs. They were unconcerned then that the effect of their product was to ravage the bodies and minds of their customers; that, in fact, by creating this vast numbers of addicts, assisting them in their addiction, they were taking away the hope that these people had for any kind of productive life.

This sentence is about hope.... [A] life sentence in this case—and as I felt at the time that I imposed the life sentence, as mandated by law—is not a life without all hope, as characterized by the defense counsel. These defendants have adjusted and have found meaning in their lives as they presently exist.

They are, through force of character, I believe, committed to trying to conduct themselves in prison in a way that is meaningful and is in accordance with their religious convictions.

But ultimately, this sentence has to send and continue to send a message to the community.

After the most careful consideration and review of this case, I have concluded that this sentence [sic] does call for the maximum sentence.

Tr. 22–25. Accordingly, the court resentenced Victor and George to life imprisonment without parole and reimposed the $2 million fines on the § 848(a) counts. These appeals followed.

## II.  DISCUSSION

On appeal, Victor and George contend that their sentences of life imprisonment without possibility of parole violate the Eight Amendment's prohibition against "cruel and unusual punishments" because the district court disregarded mitigating evidence of their individual characteristics and their prospects for rehabilitation and, in light of that evidence, imposed a sentence that was disproportionately severe. We have considered all of appellants' arguments and have found them to be without merit.

Although the sentencing court in its oral decision may not have itemized all of the Torres brothers' character evidence, its statements reflect not only its consideration of that evidence, but its crediting of defendants' statements concerning their postconviction religious conversions and the effect on their sense of values. On appeal, the sentencing court's determination of the appropriate weight to be given to that evidence is entitled to "substantial deference." *Solem v. Helm*, 463 U.S. 277, 290 n. 16, 103 S.Ct. 3001, 3009 n. 16, 77 L.Ed.2d 637 (1983). "Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits." *Id.; see also United States v. Aiello.* 864 F.2d 257, 265 (2d Cir.1988); *United States v. Persico*, 853 F.2d 134, 138 (2d Cir.1988); *United States v. Gaggi*, 811 F.2d 47, 63 (2d Cir.), *cert. denied*, 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987).

Under the Supreme Court's most recent Eighth Amendment decision, the sentences imposed on the Torres brothers are plainly within constitutional limits. In *Harmelin v. Michigan*, —— U.S. ——, 111 S.Ct. 2680,

115 L.Ed.2d 836 (1991), the Court ruled that a mandatory sentence of life imprisonment without possibility of parole for a first offense of possession of 650 grams of cocaine does not violate the Eighth Amendment. *See also Solem v. Helm,* 463 U.S. at 299 n. 26, 103 S.Ct. at 3014 n. 26 (indicating that a statute mandating life imprisonment without parole could constitutionally be applied to "fourth-time heroin dealers"); *United States v. Aiello,* 864 F.2d at 265 (upholding sentence of life imprisonment without parole imposed on "a large supplier of hard drugs to wholesale distributors for an extended period of time"). In light of these precedents, there can be little question that, as a matter of constitutional doctrine, a sentence of life imprisonment without parole for offenses as serious as those committed by the Torres brothers as leaders of a multimillion dollar heroin trafficking organization does not constitute "cruel and unusual punishment."

## CONCLUSION

The judgments of conviction, sentencing the Torres brothers to imprisonment for life without the possibility of parole for violations of 21 U.S.C. § 848(a), are affirmed.