20-4177 (L)
*United States v. Gillon, Aguirre*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of November, two thousand twenty-three.

Present:
>            DEBRA ANN LIVINGSTON,
>                 *Chief Judge*,
>            RICHARD C. WESLEY,
>            DENNY CHIN,
>                 *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

>            *Appellee*,

>      v.                                          20-4177 (L), 22-46 (con)

TROY R. GILLON, HERMAN E. AGUIRRE, AKA 007,
AKA LUCKY, AKA PRIMO, AKA FREDDY,

>            *Defendants-Appellants*,

JOSE RUBEN GIL, AKA UNC, AKA RUBEN GIL
CAMPOS, AKA MAYOR OF MEXICO, SONIA HERNANDEZ, MARTHA AGUIRRE, JUAN ALFARO, MARGARET BANUELOS, AKA LISA, DARRYL J. WILLIAMS, AKA D, TRENT ADAIR HAMILTON, MICHAEL PAUL MITCHELL, DEMETRIUS YARBOROUGH, AKA TU-TU, RASHAWN CRULE, AKA BLACK, AKA SHAWN, MAULANA LUCAS, AKA BIG DADDY, AKA SHABAZZ, SHIRLEY GRIGSBY, RALIK HAMILTON,

1

JOSEPH THOMPSON, AKA JO-JO, AKA SKOOLS,
AKA SKOOLBOY, DION CHEATHAM,

*Defendants.*

_____

| | |
|---|---|
| For Appellee: | SEAN ELDRIDGE (Katherine A. Gregory, *on the brief*), Assistant United States Attorneys *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY. |
| For Defendant-Appellant Aguirre: | SARAH KUNSTLER, Law Office of Sarah Kunstler, Brooklyn, NY. |
| For Defendant-Appellant Gillon: | JOSEPH Z. AMSEL, Law Office of Joseph Z. Amsel, New York, NY. |

Appeal from judgments of the United States District Court for the Western District of New York (Vilardo, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court as to Defendant-Appellant Herman E. Aguirre is **AFFIRMED** in part and **REMANDED** with instructions to vacate in part, and that the judgment of the district court as to Defendant-Appellant Troy Gillon is **AFFIRMED**.

Following a trial by jury, Defendants-Appellants Herman E. Aguirre and Troy Gillon were convicted of conspiracy to possess with the intent to distribute heroin, fentanyl, and cocaine, in violation of 21 U.S.C. § 841 and § 846.  Aguirre was also convicted of being a principal administrator of a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848(a) and (b), and money laundering conspiracy, in violation of 18 U.S.C. § 1956(h), (a)(1)(A)(i), and (a)(1)(B)(ii).  The district court (Vilardo, *J.*) sentenced Aguirre to life in prison on the CCE charge, 300 months' imprisonment on the narcotics conspiracy charge, and 240 months' imprisonment on the money laundering charge, all to run concurrently.  The district court sentenced

Gillon to 300 months' imprisonment for his role in the narcotics conspiracy.

Before this court, Aguirre challenges his sentencing for both the CCE offense and the underlying narcotics conspiracy, which is a lesser-included offense of the former, as a violation of the Double Jeopardy Clause of the United States Constitution. Aguirre also appeals his conviction on the grounds that the jury was improperly instructed as to the elements of a CCE offense and that the government presented insufficient evidence to establish that he supervised five or more persons or earned substantial income or resources from his crimes. Lastly, Aguirre contends that his mandatory life sentence for the CCE offense violates the Eighth Amendment's prohibition on cruel and unusual punishment.

As for Gillon, he contends that the district court erred in denying his motion to suppress evidence and his motions to dismiss the indictment or for a new trial pursuant to Federal Rule of Criminal Procedure 33(a). Gillon also appeals his sentence on the ground that it is procedurally and substantively unreasonable.

We agree that Aguirre's sentencing for both the narcotics conspiracy and the CCE offenses violates the Double Jeopardy Clause and therefore remand to the district court with instructions to vacate one or the other. We disagree with Aguirre's remaining contentions, as well as each of Gillon's challenges, and therefore affirm as to all other issues raised. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal.

## I. Aguirre's Appeal

### A. Double Jeopardy

At the start, the Government agrees that 21 U.S.C. § 846 is a lesser-included offense of 21 U.S.C. § 848. *See Rutledge v. United States*, 517 U.S. 292, 307 (1996) (noting "[a] guilty verdict on a § 848 charge necessarily includes a finding that the defendant also participated in a conspiracy

3

violative of § 846; conspiracy is therefore a lesser included offense of CCE"). "Accordingly, '[o]ne of [Aguirre's] convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense' and must be vacated." *Id.* (quoting *Ball v. United States*, 470 U.S. 856, 864 (1985)). The decision as to which conviction to vacate is one we leave to the district court's discretion. *Id.*; *see also United States v. Goodwin*, 131 F.3d 132, at *7 (2d Cir. 1997) (unpublished opinion). We therefore remand with instructions for the district court to vacate Aguirre's conviction and sentence for either the narcotics conspiracy or the CCE.

### B.    Sufficiency of the Evidence

As to Aguirre's sufficiency of the evidence argument, we review the denial of a Rule 29 motion *de novo*. *United States v. Alcius*, 952 F.3d 83, 86 (2d Cir. 2020) (per curiam). "A defendant challenging the sufficiency of the evidence bears a heavy burden because a reviewing court must consider the evidence in the light most favorable to the prosecution and uphold the conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Bramer*, 956 F.3d 91, 96 (2d Cir. 2020) (internal quotations omitted); *see also Alcius*, 952 F.3d at 86. Under this standard, we "credit[] every inference that the jury might have drawn in favor of the government, and recogniz[e] that the government's evidence need not exclude every other possible hypothesis." *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008) (internal quotations and citations omitted). If competing inferences arise, we defer to the jury's choice, *id.*, no matter whether the evidence under review "is direct or circumstantial." *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011).

Aguirre challenges two elements of his CCE conviction, the first of which involves whether he supervised five or more persons. Aguirre concedes that a reasonable jury could have found him to be a supervisor of Sonia Hernandez, Martha Aguirre, and Roberto Tenas, but he argues that

4

the evidence is insufficient to find him a supervisor over Jose Roben Gil, Darryl Williams, Maulana Lucas, Troy Gillon, Margaret Banuelos, Juan Banuelos, or Juan Alfaro. Because Aguirre did not raise this argument before the district court, we review the sufficiency of the evidence as to this element for plain error.

Viewing the record in the light most favorable to the government, we conclude that the evidence was sufficient for a reasonable jury to find that Aguirre supervised at least two other individuals in addition to the three he conceded. "[G]enerally[,] a management or supervisory relationship within the meaning of § 848 is 'created when one person gives orders or directions to another person who carries them out.'" *United States v. Roman*, 870 F.2d 65, 73 (2d Cir. 1989) (quoting *United States v. Stratton*, 779 F.2d 820, 827 (2d Cir. 1985)). Furthermore, "[a] conviction may be sustained on the basis of the testimony of a single accomplice, so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *United States v. Diaz*, 176 F.3d 52, 92 (2d Cir. 1999) (internal citation omitted). At trial in this case, Gil and Williams testified that Aguirre was their boss and that he directed their activities in the conspiracy. Lucas, who accidentally threw away several kilograms of heroin that Aguirre had shipped to Buffalo, testified that Aguirre made him dumpster dive to find them; when Lucas could not locate one of the kilos, Aguirre told him either "work it off, or I'm gonna kill you." GA 0788-0792. Their testimony provided sufficient evidence for the jury to find the necessary supervisory relationships.

Although there is less direct testimony regarding Gillon's relationship with Aguirre, evidence at trial showed that the two had a meeting in December 2014 about distributing China White (*i.e.*, fentanyl), that Gillon received and distributed the drugs that Aguirre shipped to him, and that Gillon had the same access to Aguirre that Williams did. Given our existing precedents that

5

conclude even "streetcorner sellers" can be construed as within a kingpin's supervision (no matter whether the two had even met), the jury was entitled to find that Gillon "clearly operated within an organization that [Aguirre] managed and organized." *United States v. Cruz*, 785 F.2d 399, 407 (2d Cir. 1986).[1]

With regards to Aguirre's argument that the evidence was insufficient to prove that he obtained substantial income from his narcotics activities, we again disagree. The CCE statute "does not prescribe the minimum amount of money required to constitute 'substantial' income, but the language clearly was intended to exclude trivial amounts derived from occasional drug sales." *United States v. Losada*, 674 F.2d 167, 173 (2d Cir. 1982). In *Losada*, we determined that even $2,000 was "not so insignificant as to render the statute inapplicable." *Id.* Here, the more than $7,500 that Aguirre had in his possession at arrest exceeds the $2,000 threshold we identified in that case. *See also Roman*, 870 F.2d at 75 (permitting an inference of substantial income from the size of an organization, volume of sales, and $2,500 in ready cash). Moreover, despite having filed for bankruptcy as to his legitimate businesses, Aguirre maintained a large home with high-end electronics, jewelry, and classic cars during the period of the conspiracy. Most importantly, Aguirre dealt in millions of dollars' worth of narcotics, far more than the "tens of thousands of dollars worth of narcotics" that we have already declared "[c]learly" sufficent for

---

[1] The additional conspirators identified by the government, including the Banueloses and Alfaro, were primarily involved in the money laundering conspiracy used to launder and then distribute the proceeds from the drug ring. We have recognized that an agreement to engage in "laundering proceeds" can prove participation in a narcotics conspiracy. *United States v. Orozco-Prada*, 732 F.2d 1076, 1080 (2d Cir. 1984). Moreover, the government need not prove that an individual knew the details of the conspiratorial scheme, nor the identities of the other conspirators. *See United States v. Hawkins*, 547 F.3d 66, 71 (2d Cir. 2008); *United States v. Downing*, 297 F.3d 52, 57 (2d Cir. 2002). Based on the evidence adduced at trial, we conclude that the jury was entitled to find that Aguirre's supervisory role in the drug conspiracy encompassed the Banueloses and Alfaro, as well as the other supervisees.

a jury to reasonably conclude that the defendant "derived substantial income from his narcotics activities." *United States v. Casamento*, 887 F.2d 1141, 1159 (2d Cir. 1989). Given all these facts, a rational jury could have found the government proved the substantial resources element beyond a reasonable doubt.

### C. Jury Instructions

Aguirre next argues that the district court erred when it failed to instruct the jury that the special conditions required under 21 U.S.C. § 848(b) must be shown "beyond a reasonable doubt." We again disagree. "To secure reversal, [Aguirre] must demonstrate that the instruction given was erroneous, *i.e.*, that when viewed as a whole, the instruction misled or inadequately informed the jury 'as to the correct legal standard.'" *United States v. Felder*, 993 F.3d 57, 63 (2d Cir. 2021) (quoting *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004)), *cert. denied*, 142 S. Ct. 597 (2021). Furthermore, because he did not object below, we review this claim under a plain error standard, exercising our discretion to reverse only if the error is clear, affected a defendant's substantial rights, and seriously affected the fairness or integrity of judicial proceedings. *See United States v. Calderon*, 944 F.3d 72, 91 (2d Cir. 2019).

Applying these standards, we cannot conclude that the district court plainly erred. The district court accurately described the five elements of a CCE offense and added that "only if" the jurors agreed that those elements were met should they turn to the 21 U.S.C. § 848(b) special conditions. GA 1289. Crucially, the district court repeatedly instructed the jury that each charge had to be proven beyond a reasonable doubt. *See, e.g.*, GA 1262 ("The question that you must ask yourselves as you sift through the evidence on each count is: has the government proven the guilt of the defendant . . . charged in that count beyond a reasonable doubt?"); *see also* GA 1265-66, 1284-90. The verdict sheet reiterated this requirement on the face of its first page:

7

"Your answers to the questions on this form must be unanimous. Before you may find a defendant guilty on a certain count, you must find that the government has proven the essential elements of that count against that defendant beyond a reasonable doubt." A 309.

To be sure, the district court did not specifically instruct that the special conditions must be shown beyond a reasonable doubt. But in the context of the entire instruction, *see* GA 1262-1290, the jury was neither misled nor inadequately informed about the reasonable doubt standard. Indeed, "beyond a reasonable doubt" was the *only* standard the jurors were ever instructed to apply. With no evidence of confusion and no objection below, Aguirre has failed to establish plain error.

Aguirre also argues that the court erred by failing to tell the jury that it must find the enterprise in question "involved at least 300 times the quantity of the substance described in" 21 U.S.C. § 841(b)(1)(B). He suggests that the court "merely told the jury that it would be asked 'to fill in the amounts of the drugs involved in the continuing criminal enterprise,'" citing to the trial transcript. But the verdict sheet asked if the CCE involved "at least 30 kilograms of heroin and 150 kilograms of cocaine"— precisely 300 times the quantities described in the statute (*i.e.*, 100 grams of heroin, 500 grams of cocaine), as required by 21 U.S.C. § 848(b)(2)(A). This was not error.[2]

---

[2] After the parties submitted briefing, this Court decided *United States v. Montague*, 67 F.4th 520 (2d Cir. 2023), which held that 21 U.S.C. § 848(b)(2)(A)—requiring "the violation referred to in subsection (c)(1) involve[] at least 300 times the quantity of a substance described in subsection 841(b)(1)(B)"—cannot be satisfied by aggregating smaller drug quantities from multiple violations. In that case, the *Montague* court went on to determine that the error did not substantially affect the defendant's rights because the trial evidence established that there was sufficient drug quantity without aggregation. *Montague*, 67 F.4th at 533-38. Aguirre has not raised an argument based on *Montague*, but assuming *arguendo* that a *Montague* error occurred, we conclude that any such error did not affect substantial rights for the same reason.

8

### D. Cruel and Unusual Punishment

Finally, Aguirre argues that the mandatory life sentence that the district court imposed on him constitutes cruel and unusual punishment. With respect to CCE convictions, however, we have affirmed that life sentences "are plainly within constitutional limits." *United States v. Torres*, 941 F.2d 124, 127 (2d Cir. 1991). We therefore reject his Eighth Amendment argument.

## II. Gillon's Appeal

### A. Gillon's Statements

Gillon first contends that the district court erred in denying his motion to suppress statements he made to police before his arrest as involuntary. "On appeal from a challenged suppression order, we review a district court's findings of fact for clear error, and its resolution of questions of law and mixed questions of law and fact *de novo*." *United States v. Haak*, 884 F.3d 400, 408 (2d Cir. 2018). In this case, even assuming *arguendo* that Gillon was in custody at the time of his initial statements to the federal investigators, he has not shown that the district court erred in concluding that his statements were voluntary. Accordingly, his argument is without merit.

Gillon made the statements at issue during a meeting with federal law enforcement agents at the Lockport police station early in the morning on March 10, 2015 and during two subsequent meetings at locations Gillon selected. The district court found that federal agents and local police told Gillon that he was not under arrest at least four times on March 10. They read Gillon his *Miranda* rights and offered him an opportunity to contact his lawyer. We discern no error in the district court's conclusion that Gillon acted of his own accord in rejecting that option and talking to the investigators, on that occasion and subsequently, without the advice of counsel. The district court also did not err in determining that Gillon's will was not overborne by any assurances made by the investigators, who, as the district court found, never promised him immunity.

9

Gillon argues that the court erred in denying his Rule 33(a) motion because prosecutors breached a supposed immunity agreement arising from their encounters. "A court will not, however, readily imply an improper promise or misrepresentation from vague or ambiguous statements by law enforcement officers. This is particularly so with respect to promises of leniency." *Haak*, 884 F.3d at 410. As discussed *supra*, the district court concluded that Gillon's assertion that the investigators promised him immunity is belied by the evidence. Far from clearly erroneous, this conclusion is amply supported by the record. The agents Gillon met with were unequivocal in their declarations that they could not make any promises on behalf of the United States Attorney. In short, there was no immunity agreement for prosecutors to have breached, and therefore the district court did not err by denying Gillon's motion.

### B.      Sentencing

Gillon finally argues that his sentence is procedurally and substantively unreasonable based on allegedly incorrect Guidelines calculations by the district court and the relatively more lenient sentences that his co-conspirators received. We review the procedural and substantive reasonableness of a sentence "under a deferential abuse-of-discretion standard." *United States v. Richardson*, 958 F.3d 151, 153 (2d Cir. 2020) (internal citation omitted).

Gillon contends that the district court improperly calculated the Guidelines in several ways. First, he argues that the court chose an incorrect base offense level by including the activities of his co-conspirator, Williams, as relevant conduct. But in the context of jointly undertaken criminal activity, the acts or omissions of others constitute relevant conduct if they were within the scope of the jointly undertaken activity, in furtherance of the activity, and reasonably foreseeable in connection with the activity. USSG § 1B1.3. The evidence at trial showed that Gillon and

Williams worked together with Aguirre and moved narcotics between themselves, so it was not an abuse of discretion for the district court to group Gillon's activities with Williams'.

Second, Gillon argues that it was error to use the "multiplier method" in determining that six kilograms of drugs were distributed each week from June 2013 through September 2015 in the Western District of New York. It is true that the volume and frequency of drug deliveries were inconsistent throughout the charged period, but the cutoff for the relevant base offense level was 90,000 kilograms or more of narcotics. See USSG § 2D1.1(a)(5); Gillon PSR ¶69. Because the total amount attributed to Gillon was 235,000 kilograms, even accounting for a break in deliveries between March and September 2015 would not have lowered the relevant amount below the 90,000-kilogram threshold. It was therefore not an abuse of discretion for the district court to use the multiplier method.

Third, Gillon claims that he was a minor figure in the organization and thus that the four-point enhancement for being a leader or organizer pursuant to USSG § 3B1.1 was improper. While he may have had a smaller role than Aguirre or Gil, "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." *United States v. Escotto*, 121 F.3d 81, 86 (2d Cir. 1997) (quoting USSG § 3B1.1 cmt. n.4). The district court found at sentencing that Aguirre "played a pivotal role in facilitating the conspiracy here in Western New York." GA 1328. The district court adopted the Presentence Report ("PSR") as its findings of fact, including the PSR's description of how Gillon was the primary organizer and leader of the Western New York-based arm of the conspiracy. Because "[a] district court satisfies its obligation to make the requisite factual findings when it indicates in its written judgment that it is adopting the findings set forth in the PSR," *United States v. Eyman*, 313 F.3d 741, 745 (2d Cir. 2002), we discern no error in the district court's well-reasoned decision to apply the enhancement.

11

Fourth, Gillon argues the district court erred when it computed Gillon's criminal history category based, in part, on a finding that the instant crime was committed within 15 years of Gillon's release from imprisonment for a 1995 conviction for conspiracy to distribute cocaine. We disagree. The district court properly recognized that, with regards to his 1995 conviction, Gillon violated the terms of his supervised release and was therefore sentenced to 24 additional months in prison in March 2001. GA 1312. The latest possible date for the commencement of Gillon's drug conspiracy offense is September 2015, less than 15 years after his release from imprisonment for the 1995 conviction. Thus, the district court did not err in calculating his criminal history category.

Gillon also contends that the sentence he received is substantively unreasonable because it is longer than the sentences imposed on defendants he characterizes as more culpable. But a sentence is only substantively unreasonable if it is "so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing [it] to stand would damage the administration of justice." *United States v. Muzio*, 966 F.3d 61, 64 (2d Cir. 2020) (quoting *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012)). "Mere disagreement" with how the sentencing court balanced the relevant sentencing factors is not a sufficient basis to find that the court abused its discretion. *United States v. Halvon*, 26 F.4th 566, 569 (2d Cir. 2022). Based on the remarkable volume of narcotics involved and Gillon's unique role in trafficking them, his sentence is not "shockingly high" nor "otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009). When reviewing substantive reasonableness of a sentence, this Court's practice is to "exhibit restraint, not micromanagement." *United States v. Fleming*, 397 F.3d 95, 100 (2d Cir. 2005). We therefore affirm the district court's sentencing judgment.

\*     \*     \*

We have considered the remaining arguments by both Aguirre and Gillon and find them to be without merit. Accordingly, we **REMAND** to the district court with instructions to vacate either Aguirre's 300-month sentence under 21 U.S.C. §§ 841 and 846 or his concurrent life sentence under 21 U.S.C. § 848, and we **AFFIRM** all other challenged aspects of the judgments on appeal.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court